**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 22-cr-15** |
| | : | |
| **v.** | : | |
| | : | |
| **ELMER STEWART RHODES III,** | : | |
| | : | |
| **KELLY MEGGS,** | : | |
| | : | |
| **KENNETH HARRELSON,** | : | |
| | : | |
| **JESSICA WATKINS,** | : | |
| | : | |
| **ROBERTO MINUTA,** | : | |
| | : | |
| **JOSEPH HACKETT,** | : | |
| | : | |
| **DAVID MOERSCHEL,** | : | |
| | : | |
| **THOMAS CALDWELL, and** | : | |
| | : | |
| **EDWARD VALLEJO,** | : | |
| | : | |
| **Defendants.** | : | |

**UNITED STATES' MOTION IN *LIMINE* TO PRECLUDE
CERTAIN DEFENSE ARGUMENTS AT TRIAL**

The United States of America, by and through its attorney, the United States Attorney for

the District of Columbia, hereby submits the following motion in *limine* to preclude the defendants

from raising a public-authority or entrapment-by-estoppel defense at trial. Having failed to provide

notice as required under the Federal Rules of Criminal Procedure, the defendants are foreclosed

from raising the defense in the first instance. As to the merits, the defendants should be precluded

from advancing, in opening statement or through witness questioning, the claim that the defendants' actions were authorized by public authority or that they were entrapped.[1]

## ARGUMENT

### A. Defendants failed to provide notice pursuant to Federal Rule of Criminal Procedure 12.3(a)(1) of their intent to assert a defense of actual or believed exercise of public authority and are therefore barred from raising such a defense at trial.

Federal Rule of Criminal Procedure 12.3(a)(1) requires defendants to provide notice if they "intend[ ] to assert a defense of actual or believed exercise of public authority on behalf of a law enforcement agency or federal intelligence agency at the time of the alleged offense." Such notice must be in writing and be filed with the clerk "within the time provided for filing a pretrial motion, or at any later time the court sets." Fed. R. Crim. P. 12.3(a)(1). The notice must contain the law enforcement or federal intelligence agency involved, the specific agency member, and the time during which the defendant claims to have acted with public authority. Fed. R. Crim. P. 12.3(a)(2)(A)-(C). A failure to comply allows the court to exclude the testimony of any undisclosed witness except the defendant. Fed. R. Crim. P. 12.3(c).

In a discovery letter dated March 24, 2021, the government formally requested that defendants provide the government with the appropriate written notice if defendants planned to rely upon any of the defenses referenced in Federal Rules of Criminal Procedure 12.1, 12.2, and 12.3. On August 6, 2021, the government wrote the defendants to note, inter alia, that the Federal Rules of Criminal Procedure required them to provide written notice of an intent to assert a public authority defense. On April 25, 2022, the government again wrote defendants reminding them that, to date, they had not provided notice of their intent to pursue certain defenses at trial, to include a

---

[1] The government incorporates by reference the factual background set forth in its prior pleadings.

public authority defense. The Court later extended the time to file supplemental Rule 12 motions to July 11, 2022. *See* July 7, 2022 Minute Order. The defendants have not provided written notice of an intent to raise a public authority defense. As the deadline for providing such notice has now expired, defendants should be precluded from asserting a defense of public authority. Fed. R. Crim. P. 12.3(c).

> **B. There is no available public-authority defense because President Trump lacked actual authority to order the defendants' criminal conduct, and any reliance would have been unreasonable.**

Even if notice had been timely, defendants should be precluded from advancing a public authority defense. **"**The public authority defense allows 'the defendant [to] seek[ ] exoneration based on the fact that he reasonably relied" on the "actual authority of a government official to engage him in a covert activity.'" *United States v. Fulcher* 250 F.3d 244, 253-54 (4th Cir. 2001); *see* Fed. R. Crim. P. 12.3(a)(1).[2] Here, any "public-authority" defense put forth by the defendants would fail for two reasons: no government agent possessed actual authority to order the defendants' criminal actions, and, in any event, it would have been objectively unreasonable to rely on any such order.

First, "[t]he validity of" the public-authority "defense depends upon whether the government agent in fact had authority to empower the defendant to perform the acts in question. If the agent had no such power, then the defendant may not rest on the 'public authority' [defense]." *United States v. Burrows*, 36 F.3d 875, 881-82 (9th Cir. 1994) (quoting *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1368 n.18 (11th Cir. 1994)). The circuits that have considered the issue are unanimous on that point. *See, e.g.*, *United States v. Sariles*, 645 F.3d 315, 318-19 (5th

---

[2] "Rule 12.3 sets forth a notice requirement but does not limit or expand the public authority defense," which was defined by federal common law prior to that Rule's adoption. *See, e.g.*, *United States v. Burrows*, 36 F.3d 875, 881 (9th Cir. 1994).

Cir. 2011) ("the public authority defense requires the defendant reasonably to rely on . . . actual, not apparent, authority"); *Fulcher*, 250 F.3d at 254 ("we adopt the unanimous view of our sister circuits that the defense of public authority requires reasonable reliance upon the actual authority of a government official"); *United States v. Pitt*, 193 F.3d 751, 758 (3d Cir. 1999), *abrogated on other grounds by Honeycutt v. United States*, 137 S. Ct. 1626 (2017); *United States v. Holmquist*, 36 F.3d 154, 161 nn. 6-7 (1st Cir. 1994) (characterizing as "nonexistent" and "not a defense at all" the "'defense' of apparent public authority" based "on a mistaken but good-faith belief that one's conduct is authorized by the government"); *United States v. Duggan*, 743 F.2d 59, 84 (2d Cir. 1984) (declining to adopt view that "a defendant may be exonerated on the basis of his reliance on an authority that is only apparent and not real"); *cf. United States v. Sampol*, 636 F.2d 621 (D.C. Cir. 1980) (noting in dicta that defendants' claim that CIA officer had conspired with them to murder an ambassador "would not have created a defense if appellants' participation in the crimes had been established," and therefore describing evidence of the officer's employment with the CIA as likely "immaterial").

President Trump did not have the authority to permit or authorize a conspiracy to forcibly oppose the authority of the government or the execution of the laws of the United States, nor could he have lawfully sanctioned the attack on the United States Capitol on January 6 or any of the other criminal conduct allegedly perpetrated by defendants. As Chief Judge Howell wrote last year in rejecting the idea of an entrapment-by-estoppel defense for January 6 defendants:

> [A President] cannot, in keeping with his constitutional function and his responsibilities under Article II, lawfully permit actions that directly undermine the Constitution. Thus, a President cannot, within the confines of his constitutional authority, prevent the constitutionally mandated certification of the results of a Presidential Election or encourage others to do so on his behalf, nor can he direct an assault on the coequal Legislative branch of government. Were a President to attempt to condone such conduct, he would act *ultra vires* and thus without the force of his constitutional authority. . . . Put simply, even if former President Trump

4

in fact [explicitly directed the rioters' actions,] his statements would not immunize defendants charged with offenses arising from the January 6 assault on the Capitol from criminal liability.

*United States v. Chrestman*, 525 F. Supp. 3d 14, 32-33 (D.D.C. 2021).

The D.C. Circuit came to the same conclusion in *United States v. North*, when addressing Oliver North's contention that President Ronald Reagan authorized his obstruction of Congress in that case. 910 F.2d 843, 879 (D.C. Cir. 1990) (per curiam), *opinion withdrawn and superseded in part on reh'g*, 920 F.2d 940 (D.C. Cir. 1990). The court made clear that "'[n]either the President nor any of [North's] superiors had the legal authority to order anyone to violate the law,' particularly if such 'orders,' explicit or implicit, represented nothing more than [the President's] desires." *Id.* at 891 n.24. Thus, even if President Trump explicitly called for the defendants to engage in the charged criminal conduct, that could not underlie a public-authority defense or entrapment-by-estoppel. In any event, that did not happen.

The D.C. Circuit's decision in *United States v. Barker*, 546 F.2d 940 (D.C. Cir. 1976) (per curiam), is not to the contrary. In *Barker*, the court reversed the convictions of two defendants who participated in the burglary of Daniel Ellsberg's psychiatrist's office. The defendants claimed they did so at the behest of E. Howard Hunt, a long-time CIA agent who worked under the supervision of John Ehrlichman in the White House. *North*, 910 F.2d at 879. The case featured fractured separate opinions from the three-judge panel. Judge Wilkey, half of the two-judge majority, wrote that a defendant's reasonable reliance on the "apparent authority" of a government official (there, Hunt) to authorize his conduct could make out a defense. *Id.* (quoting *Barker*, 546 F.2d at 949 (opinion of Wilkey, J.). But that portion of *Barker* was not the controlling rationale, and the panel majority in *North* subsequently rejected North's request for an instruction invoking his superiors' "apparent authorization of his action." *Id.* at 881. In any event, Judge Wilkey's application of reasonable reliance in *Barker*—where the defendants, each of whom had worked with the CIA,

claimed that a government official (and previous CIA supervisor) authorized what they allegedly were told was a counter-espionage operation—has no analogue here. *Barker* therefore does not undermine straightforward principle that the President lacks the authority to empower citizens to oppose by force the authority of the United States, enter restricted Capitol grounds and buildings, obstruct congressional proceedings, or engage in civil disorder. *See, e.g.*, *North*, 910 F.2d at 891 n.24.

Second, "a defendant makes out a defense of public authority only when he has shown that his reliance on governmental authority was reasonable as well as sincere." *Burrows*, 36 F.3d at 882; *Fulcher*, 250 F.3d at 254; *Sariles*, 645 F.3d at 318-19. This reasonableness requirement is necessary to ensure the "uniform enforcement of law"; otherwise, anyone could interpret a public official's actions or statements as authorizing them to engage in criminal conduct. *Id.* (quoting *United States v. Lansing*, 424 F.2d 225 (9th Cir. 1970)). Any claim that defendants believed they had been authorized as an agent of the Executive Branch to oppose by force the authority of the United States, or forcibly stop the congressional certification of the vote by breaking into the Capitol would be objectively unreasonable.

### C. There is no available entrapment-by-estoppel defense because the defendants cannot point to a government interpretation of the statutes they are charged with violating on which they reasonably relied.

"The difference between the entrapment by estoppel defense and the public authority defense is not great." *Burrows*, 36 F.3d at 882; *see also United States v. Baker*, 438 F.3d 749, 753 (7th Cir. 2006) ("The elements that comprise the two defenses are quite similar."). Courts have narrowly confined the entrapment-by-estoppel defense. The Supreme Court first adopted a due process defense to entrapment by public officials in *Raley v. Ohio*, 360 U.S. 423 (1959). In *Raley*, the Supreme Court set aside the convictions of three individuals who refused to answer the

questions of the Ohio Un-American Activities Commission, in reliance on inaccurate representations by the Commission "that they had a right to rely on the privilege against self-incrimination" under the Ohio Constitution. 360 U.S. at 425. The Court held that the convictions violated the Fourteenth Amendment's Due Process Clause because they involved "the most indefensible sort of entrapment by the State—convicting a citizen for exercising a privilege which the State clearly had told him was available to him." *Id.* at 438. The Court emphasized that the Commission's advice constituted "active misleading" as to the contours of that "vague and undefined" area of law. *Id.*

A few years later, the Supreme Court revisited the subject in *Cox v. Louisiana*, 379 U.S. 559 (1965). *Cox* reversed the conviction of a protester who had led a group of 2,000 in a civil rights march across the street from a courthouse and was later prosecuted for violating an anti-picketing statute prohibiting demonstrations "near" a courthouse. 379 U.S. at 560, 564-65. The statute did not define that term. *Id.* at 560. The protesters had been "affirmatively told" by "the highest police officials of the city, in the presence of the Sheriff and Mayor," that protesting across the street from the courthouse was lawful under that statute. *Id.* at 571. The Court determined that the statute's ambiguous term "near" necessarily "foresees a degree of on-the-spot administrative interpretation by officials charged with responsibility for administering and enforcing it," and thus found that the demonstrators "would justifiably tend to rely on [the police's] administrative interpretation of how 'near' the courthouse a particular demonstration might take place." *Id.* at 568-69. The Court concluded that the local officials' interpretation of "near" was a "limited administrative regulation of traffic" that the protesters reasonably relied on. *Id.* at 569. But it also made clear that a defendant cannot reasonably rely on a law enforcement official's attempt to provide "a waiver of law," which the Court described as "beyond the power of the police." *Id.*

Distilling these cases, recent case law has limited the entrapment-by-estoppel defense to the narrow circumstances in which a defendant reasonably relies on a government agent's interpretation of a statute that, if accurate, would render the defendant's conduct non-criminal. "To win an entrapment-by-estoppel claim, a defendant criminally prosecuted for an offense must prove (1) that a government agent actively misled him about the state of the law defining the offense; (2) that the government agent was responsible for interpreting, administering, or enforcing the law defining the offense; (3) that the defendant actually relied on the agent's misleading pronouncement in committing the offense; and (4) that the defendant's reliance was reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation." *Cox*, 906 F.3d at 1191; *see also United States v. Neville*, 82 F.3d 750, 761 (7th Cir. 1996) ("[W]e have required that [1] the government official 'actively mislead the defendant; and that the defendant's reliance be [2] actual and [3] reasonable in light of the identity of the agent, the point of law represented, and the substance of the misrepresentation."); *Burrows*, 36 F.3d 875 at 882 ("This defense applies when [1] a government official [2] tells a defendant that certain conduct is legal and the defendant commits what would otherwise be a crime [3] in reasonable reliance on the official's representation." (quoting *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1368 n.18 (11th Cir. 1994)). Last year, Chief Judge Howell adopted the Tenth Circuit's four-part test from *Cox* in preliminarily rejecting a Capitol riot defendant's claim to the entrapment-by-estoppel defense. *See Chrestman*, 525 F. Supp. 3d at 33.

Defendants cannot satisfy any part of the entrapment-by-estoppel test. The defendants were not actively misled. Neither in his speech on January 6, 2021, nor beforehand did President Trump or any other government actor purport to interpret the scope of the statutes the defendants are charged with violating. Said another way, President Trump did not "affirmatively assure[] the

defendant[s] that certain conduct [was] legal." *United States v. Howell*, 37 F.3d 1197, 1204 (7th Cir. 1994); *United States v. Troncoso*, 23 F.3d 612, 615 (1st Cir. 1994) (defense fails absent advice from official that conduct "was actually legal"). Additionally, although the defendants have referred to the Insurrection Act, 18 U.S.C. §§ 251-254, in hearings and pleadings before this Court, the Act was never actually invoked. The defendants' expectations of official action cannot give rise to a purported anticipatory public authority defense or entrapment-by-estoppel. *See United States v. Alvarado*, 808 F.3d 474, 484 (11th Cir. 2015) (noting for public authority defense "a federal law enforcement officer must have actually authorized the defendant to commit the particular criminal act at issue and the defendant must have reasonably relied on that authorization when engaging in that conduct"); *Baker*, 438 F.3d at 755–56.

As Chief Judge Howell observed last year, an entrapment-by-estoppel defense by a January 6 rioter:

> would not be premised, as it was in *Raley* [and] *Cox*, . . . on a defendant's confusion about the state of the law and a government official's clarifying, if inaccurate, representations. It would instead rely on the premise that a defendant, though aware that his intended conduct was illegal, acted under the belief President Trump had waived the entire corpus of criminal law as it applied to the mob.

*Chrestman*, 525 F. Supp. 3d at 32; *see also United States v. Smith*, 940 F.2d 710, 715 (1st Cir. 1991) (rejecting entrapment-by-estoppel defense because federal agent allegedly encouraged defendant to keep firearms to assist with undercover operation, but never was alleged "to have represented that keeping the guns was, in fact, *legal*"); *North*, 910 F.2d 843 (noting that "North does not even claim that he relied on *any* 'conclusion or statement of *law*'"). Absent any government statement upon which the defendants could have arguably relied, the analysis can stop here.

## CONCLUSION

Motions in *limine* are "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Graves v. District of Columbia*, 850 F. Supp. 2d 6, 10 (D.D.C. 2011) (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1070 (3d Cir. 1990)). The government presents these issues to the Court in an effort to ensure an efficient trial. For the reasons set forth herein, the United States respectfully requests that this Court grant the government's motion and preclude the defendants from raising an entrapment-by-estoppel or public-authority defense at trial.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By:        /s/

Alexandra Hughes
Justin Sher
Trial Attorneys
National Security Division,
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

Troy A. Edwards, Jr.
Assistant United States Attorney
N.Y. Bar No. 5453741
Ahmed M. Baset
Louis Manzo
Jeffrey S. Nestler
Kathryn Rakoczy
Assistant United States Attorneys
U.S. Attorney's Office, District of Columbia
601 D Street NW
Washington, D.C. 20530

10