## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 22-cr-15-APM** |
| | : | |
| **ELMER STEWART RHODES III,** | : | |
| **KELLY MEGGS,** | : | |
| **KENNETH HARRELSON,** | : | |
| **JESSICA WATKINS,** | : | |
| **ROBERTO MINUTA,** | : | |
| **JOSEPH HACKETT,** | : | |
| **DAVID MOERSCHEL,** | : | |
| **THOMAS CALDWELL, and** | : | |
| **EDWARD VALLEJO,** | : | |
| | : | |
| **Defendants.** | : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT HARRELSON'S
### MOTION TO COMPEL DISCLOSURE OF EXCULPATORY INFORMATION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes Defendant Harrelson's Motion to Compel Disclosure of Exculpatory Information (ECF No. 268). Defendant Harrelson demands access to information and evidence that is immaterial, outside the government's possession, and/or already provided in discovery. Accordingly, his motion should be denied.

### Legal Standard

Criminal discovery is governed by Rule 16 of the Federal Rules of Criminal Procedure. Rule 16 mandates the disclosure of, *inter alia*, the defendant's oral, written, and recorded statements, the defendant's prior record, and documents and objects which are (1) "material to the preparation of the defendant's defense" or (2) "intended for use by the government as evidence in chief at the trial." Fed. R. Crim. P. 16(a)(1)(A)-(E); *see also United States v. Libby*, 429 F. Supp. 2d 1, 5 (D.D.C. 2006); *United States v. Marshall*, 132 F.3d 63, 67 (D.C. Cir. 1998). Rule 16 has

certain recognized exceptions, *see United States v. Armstrong*, 517 U.S. 456, 463 (1996) ("[U]nder Rule 16(a)(2), [a defendant] may not examine Government work product in connection with his case."), and the Court retains the discretion under Rule 16 to "for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief[,]" Fed. R. Crim. P. 16(d)(1).

Pursuant to *Brady* and its progeny, the government has "an affirmative duty to disclose exculpatory evidence to the defense, even if no request has been made by the accused." *United States v. Borda*, 848 F.3d 1044, 1066 (D.C. Cir. 2017). In *Brady*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. "Impeachment evidence, . . . as well as exculpatory evidence, falls within the Brady rule." *United States v. Bagley*, 473 U.S. 667, 676 (1985) (*citing United States v. Giglio*, 405 U.S. 150, 154 (1972)).

## Discovery Provided to Date

The government has provided voluminous discovery in this case and has attempted to be as helpful as possible in working with the defense to help them understand and utilize these materials.

Since October 2021, all Capitol Siege defense counsel have been able to request a license from FPD to access the defense evidence.com video repository that is managed and administered by the Federal Public Defender for the District of Columbia ("FPD") and the Defender Service's National Litigation Support Team ("NLST"). Authorized users of this database can both download and share video files. An identical video repository has also been made available to Capitol Siege defendants housed at the D.C. Jail who explicitly agree to abide by the terms of the standard Capitol Siege protective order. As of August 22, 2022, over 30,000 files consisting of

body-worn and hand-held camera footage from five law enforcement agencies and surveillance-camera footage from three law enforcement agencies and the Hilton hotel have been shared to the defense evidence.com video repository.  For context, the files provided amount to over nine terabytes of information and would take at least 105 days to view continuously.  The government has provided detailed logs describing the custodian, location, and time periods for each video file in evidence.com.  In addition, the government has provided hundreds of hours of work product consisting of analytical and mapping information for the sole purpose of assisting defense counsel in identifying video files they may deem relevant.

Since January 2022, all Capitol Siege defense counsel have been able to request a license from FPD to view materials in FPD's Relativity workspace.  The government has produced all other global discovery materials to FPD's Relativity workspace.  As of August 22, 2022, over 30,045 files (over 9.4 terabytes of information) have been provided to the defense Relativity workspace.  These files include (but are not limited to):

- Information pertaining to James "Ray" Epps (Epps has been the subject of widely-publicized claims that "paint him as a secret federal asset in charge of a 'breach team' responsible for setting off the riot at the Capitol." *See* Alan Feuer, *A Trump Backer's Downfall as the Target of a Jan. 6 Conspiracy Theory,* N.Y. TIMES, July 13, 2022.)
- U.S. House of Representatives and U.S. Senate Recording Studio footage;
- Reports (including video and audio exhibits) arising from investigations into allegations of officer misconduct on or about January 6, 2021;
- Video recorded by the D.C. Metropolitan Police Department's Electronic Surveillance Unit;
- The results of searches of 600 digital devices and 133 Stored Communications Act ("SCA") accounts;
- 238 digitally recorded interviews of investigation subjects;
- Radio communications from multiple law enforcement agencies;
- 1,149 FBI FD-302s and related attachments (FD-302s generally consist of memoranda of interviews and other investigative steps);
- 82,084 (redacted or anonymous) tips;
- Search warrant documents related to the government's collection of comprehensive data from the Capitol's cell tower infrastructure and the collection of geolocation information for the Capitol and restricted perimeter;
- Medical information for officers injured during the siege;

- Case-specific information obtained in connection with the investigation of numerous subjects whose cases have not yet been disposed and whose investigations may be on-going;
- Files provided to the government by multiple law enforcement agencies in response to Rule 16 requests for any potentially discoverable information, including information about individuals who have not been charged;
- Documents the government will use to prove interstate commerce was affected; and
- Documents related to the whereabouts of Vice President Pence on January 6, 2021.

All Relativity productions are accompanied by cover letters describing the contents of the production and indexes that provide further detail. Defense counsel can conduct limitless searches in the FPD Relativity database and can generate detailed indexes of the contents of that database based on any search conducted.

Case-specific discovery in this matter has also consisted of multiple terabytes of data. This discovery has been provided on a rolling basis, with cover letters and spreadsheets to summarize the materials included with each production and to flag any arguably exculpatory information. Periodically, the government has provided individual counsel, including counsel for Defendant Harrelson, with a hard drive containing a copy of all case-specific discovery provided to date, to ensure counsel have not missed any discovery productions. Undersigned government counsel have spent many hours responding to email and telephone requests from individual defense counsel for assistance with locating and understanding discovery materials. The government is therefore confused by Defendant Harrelson's assertion that he is "18 months into having to pry disclosures from the Government," ECF No. 268 at 3.

The government also does not know what Defendant Harrelson means when he says he "can only now be seen on video, in spite of a systemic effort to make it so difficult to access and review the video record." *Id.* at 1. As early as April 2021, undersigned government counsel began providing U.S. Capitol Police CCTV video and public source videos depicting Defendant Harrelson and his colleagues at the Capitol on January 6. These productions were accompanied

4

by logs outlining the camera number, general camera location, and time of footage captured.  On August 19, 2021—over a year ago—the government provided the defense with documents containing still photographs from the U.S. Capitol Police CCTV that tracked the movements of the defendants throughout the Capitol on January 6.  As the government explained in providing this information, "We are providing them to you in discovery to try to help you wade through the voluminous video footage provided to date."  Defendant Harrelson himself has had the possibility of reviewing these materials through the D.C. Jail's e-discovery program, which has allowed the defense to provide their clients with flash drives containing discovery materials and has allowed inmates to check out laptops to review these discovery materials for up to two weeks at a time.  The defendants incarcerated at the jail also have access to the video evidence available on evidence.com.

## Argument

Defendant Harrelson seeks an Order from this Court compelling the government to comply with 12 categories of discovery requests.  Many of these requests seek information and access that the defendant already has or that the government is willing to help the defense to obtain.  For a limited number of these requests, Defendant Harrelson seeks access to information or materials that are irrelevant and not discoverable.  For these reasons, Defendant Harrelson's motion should be denied.

### a.  Access to East Rotunda Doors

Defendant demands access for his experts to examine and test the East Rotunda doors of the United States Capitol.  The Court should deny this request.  Defendant Harrelson claims he needs such access for his experts so that he may use their testimony to establish "(a) none of the Defendants or the crowd were capable of breaking open the doors, (b) the doors were not broken

open, (c) the doors could only be opened from inside, (d) the doors could only be opened by the intervention of someone activating the doors from the security controls inside the building." ECF No. 268 at 17-18. The government has already provided discovery showing that for the breach that occurred at approximately 2:38 p.m. (two minutes before the defendants in "Stack One" entered), the doors were opened by a rioter inside the building, and then kept open by rioters outside the doors, despite efforts by law enforcement to keep the doors shut. No expert examination or testimony will be needed to establish this fact. Nor does this evidence negate that Defendant Harrelson and some of his co-defendants joined the crowd in forcing their way into the building, past law enforcement officers trying to keep them out once the doors were opened.

    b. <u>Columbus Door Information</u>

Relatedly, Defendant Harrelson "demands that the Government be ordered to provide, (1) a timeline of when the bronze Columbus doors were closed or open on January 6, 2021, (2) why the Columbus Doors were left open at any time that day if there was a perceived threat, (3) technical specifications of the Columbus Doors including brand and models of machinery involved, and technical specifications and details of the controls for operating the doors." ECF No. 268 at 18-19. The government has interviewed U.S. Capitol Police personnel and has provided to the defense with interview memoranda that contains information responsive to these first two inquiries. With respect to the technical specifications of the Columbus Doors, the government objects to this discovery request as immaterial. Any arguments the defendant wants to make about whether those doors could or should have been closed to try to stave off the attack of January 6 can be made without this technical information.[1]

---

[1] Additionally, providing a full accounting and explanation of the way these doors work presents ongoing security concerns. In light of that fact, and the immateriality of this information to the defendant's case, the Court should deny this request.

   c.  <u>Access to the U.S. Capitol Building and Grounds</u>

Next, Defendant Harrelson demands access to the United States Capitol building and grounds. The government has arranged, with the permission of Congress and the U.S. Capitol Police, numerous tours of Capitol. As discussed in the defendant's motion, ECF No. 268 at 19-20, Defendant Harrelson's counsel has attended at least one of these tours and is scheduled to attend another one soon. Neither the government nor this Court controls the U.S. Capitol, however.

   d.  <u>Information about "Restricted Area" Signage</u>

Defendant Harrelson also requests information about signage indicting where the restricted areas of the Capitol grounds were on January 6. ECF No. 268 at 20-21. It is worth noting that Defendant Harrelson is not currently charged with violating 18 U.S.C. § 1752 or the related offenses under Title 40 of the U.S. Code. Nonetheless, the government has provided the outline of the restricted area perimeter. More to the point, the government has provided Defendant Harrelson with U.S. Capitol Police CCTV and public source video that shows defendant Harrelson watching other rioters knock down the fences on the East Plaza and then follow the crowd across the plaza and up the East Rotunda steps as U.S. Capitol Police officers tried in vain to regroup and hold a police line on those stairs. Defendant Harrelson is not entitled to any additional materials with respect to this category of discovery.

   e.  <u>Information About Who "Led" the Attack on the Capitol</u>

Defendant Harrelson's next request is for information on "Who 'Led' the "Attack" on the U.S. Capitol?" ECF No. 268 at 21. Defendant frames this inquiry as needed to respond to the government's allegations, but nowhere in the Indictment does it allege that the defendants "led" the attack on the Capitol. Accordingly, Defendant Harrelson's discovery requests along these lines are not material.

f.   Information About Interactions with Law Enforcement Officers

Defendant Harrelson seeks "the identity of any and all law enforcement officers whom the prosecution erroneously claims Harrelson ever interfered with much less touched. Harrelson is entitled to call them as witnesses and investigate their stories well in advance of trial." ECF No. 268 at 22.  The government has already provided memoranda documenting interviews of a number of U.S. Capitol Police and D.C. Metropolitan Police Department Officers whom the defendants encountered at the Capitol on January 6, 2021.   Additionally, as additional interviews are conducted in advance of trial, the government will produce additional interview memoranda.

The government has a standing offer to assist all counsel in this case, including Defendant Harrelson's counsel, with locating specific items within the previously produced discovery.

g.   Information About Law Enforcement Victims

Defendant Harrelson further contends that the government "must provide any and all evidence of (a) precisely which Oath Keeper defendant the government contends injured any law enforcement officer, (b) precisely which law enforcement officer (which may be identified by a code number withholding their non-public actual identity), and (c) exactly how in complete description [the government] contend[s] any defendant injured them." ECF No. 268 at 23-24.  The government has already provided the defense with the information responsive to these questions.

h.   Information About "Suspicious Actors"

Defendant Harrelson seeks further discovery about certain individuals he deems "suspicious actors physically near Defendant Harrelson at key moments." ECF No. 268 at 23-26. Defendant claims that "the Government has actively withheld from the Defendants the identity of these witnesses known to exist and known to be actual witnesses." *Id.* at 25.  That is patently false. Government counsel has spent significant time trying to help Defendant Harrelson's counsel with

this request.  The government has worked with counsel for Defendant Harrelson to identify and

create a list of thirty of these individuals and to request of the government's Discovery Unit that

any of the FBI files regarding these individuals be made available to the defense.  The government

is unable to provide information about unknown individuals.  Accordingly, the government asks

that the Court deny his motion to compel discovery on this topic.[2]

   i.   Information About "Actors Who Actually Did" What Defendant Harrelson is Charged
        With Doing

        Defendant Harrelson also seeks "evidence that others actually organized, conspired, urged,

or encouraged people to enter and even attack the U.S. Capitol tends to prove that Harrelson did

not." ECF No. 268 at 27-30.  As explained above, the government disagrees as to the relevance

of such information.  The possible culpability of these other individuals does not negate that

Defendant Harrelson entered into a conspiracy in violation of Counts One, Two, and Four of the

Indictment, or that on January 6 he engaged in the conduct charged in Counts Three and Five, or

that he subsequently deleted evidence of these crimes from his phone as charged in Count Nine.

Nonetheless, as stated above, the government has worked with counsel for Defendant Harrelson

to create a list of thirty of these individuals whom Defendant Harrelson has deemed "suspicious

actors" and to request of the government's Discovery Unit that any of the FBI files regarding these

individuals be made available through the defense instance of Relativity.  Some of these materials

are currently available and more will be produced through Relativity in the near future.  The

government would reiterate its position, though, that the conduct of these other individuals is not

_____

[2] It may be worth noting that in the chart Defendant Harrelson includes on page 26 of his motion, showing some of these witnesses whose identities the government is allegedly withholding, all but four of the witnesses are actually identified by name.  It is unclear how many possible witnesses the defense is really asserting as unknown.

relevant, and Defendant Harrelson's desire to investigate these other individuals does not make these materials discoverable.

j.  Communications and Documents of Threat Assessments

Defendant Harrelson requests "any and all communications, messages, radio traffic, analyses, conclusions, proposals of action, opinions, recommendations, text messages, email messages, or the like including any threat assessment by the U.S. Capitol Police, the Federal Bureau of Investigation, the Secret Service, Metropolitan Police Department of the District of Columbia or other law enforcement agencies concerning any perceived threats and security arrangements for January 6, 2021.  Specifically, he is entitled to records showing when the USCP and other agencies started to decide that there was a threat possibly requiring the Joint Session of Congress to be recessed, the role of the search for more pipe bombs played, when exactly the USCP decided that the Joint Session of Congress should recess, and from what threat exactly." ECF No. 268 at 30-31.

On January 20, 2022, the government certified that it had "requested and sought all records from the U.S. Capitol Police that reflect any communications made to the Presiding Officer of each House, and any other involved persons, that led to the decision to recess the Certification of the Electoral College vote count on January 6, 2021."  ECF No. 9.  The government has produced FBI memoranda of interviews of Capitol Police officers and professional staff (such as employees of the House's and Senate's sergeant at arms and parliamentarian) on this topic.  The government has also produced, in global discovery, the Capitol Police's radio runs, along with relevant Capitol Police text messages and emails.  The undersigned counsel are not aware of additional discoverable information on this topic in the possession of the prosecution team.

k.  Request for Information for Expert Witnesses

Weeks beyond the defense expert notice deadline, Defendant Harrelson demands a list of items to assist his expert witnesses in formulating their opinions.  ECF No. 268 at 31-33.  These include U.S. Capitol Police CCTV footage from January 6.  *Id.* at 31-32.  The government has already provided all the responsive footage.  Defendant Harrelson also seeks information about how the U.S. Capitol Police decision makers responded to the riot.  *Id.* at 32.  As discussed above, this information may be located in the FBI memoranda of interviews of USCP personnel in the House and Senate around the time the presiding officer of each House decided to recess, as well as contemporaneous communications (like radio runs, text messages, or emails) in the Capitol Police's possession that have already been produced.  Defendant Harrelson asks for "the opportunity to depose individual USCP officers who may have observed the actions and tactics of these suspicious actors."  *Id.* at 32-33.  Defendant Harrelson may seek to interview such officers; the government would object to any motion for pretrial depositions of these witnesses.  Finally, Defendant Harrelson asks for "details about the physical security features associated with the Columbus doors."  *Id.* at 33.  As discussed above, the discoverable information responsive to this request has already been provided; the government would object to additional discovery as irrelevant.

l.  Communications Among Secret Service Agents, Department of Homeland Security officials, and Pentagon Officials

Finally, Defendant Harrelson seeks "any and all text messages and email messages which are reportedly now missing among Secret Service Agents, Department of Homeland Security officials, and Pentagon Officials."  ECF No. 268 at 33-34.  The undersigned government counsel do not possess these materials.  We are aware of our obligation, if relevant materials are in the possession of the prosecution team, to review such materials and make disclosures pursuant to

11

Rule 16, *Brady*, and/or Jencks.  Additionally, Defendant Harrelson does not explain why any such materials would be disclosable.  This request should be denied.

## **Conclusion**

For the reasons set forth herein, the United States respectfully requests that this Court deny Defendant Harrelson's motion to compel discovery.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By:　　　 _____/s/_____
Kathryn L. Rakoczy
Assistant United States Attorney
D.C. Bar 994559
601 D Street NW
Washington, DC 20530
Ahmed M. Baset
Troy A. Edwards, Jr.
Louis Manzo
Jeffrey S. Nestler
Assistant United States Attorneys

_____/s/_____
Alexandra Hughes
Justin Sher
Trial Attorneys
National Security Division
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20004