UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | )   Criminal No. 22-cr-15 (APM) |
| | ) |
| ELMER STEWART RHODES, III et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

OMNIBUS ORDER

I.

This Omnibus Order addresses three motions filed by Defendant Kenneth Harrelson. Defendant asks the court (1) to sever him from the First Trial Group, whose trial is scheduled to begin on September 27, 2022; (2) to exclude *in limine* certain arguments and evidence from trial; and (3) to compel production of a veritable laundry list of purported exculpatory evidence. For the reasons that follow, Defendant's motions are denied.[1]

II.

A.    Motion to Sever

Defendant asks the court to sever his trial from the First Trial Group, which consists of Harrelson, Stewart Rhodes, Kelly Meggs, Jessica Watkins, and Thomas Caldwell. Def. Harrelson's Mem. of Law in Supp. of his Mot. to Sever Trial from *Rhodes* Group, ECF No. 259 [hereinafter Def.'s Mot. to Sever]. Severance of joined defendants[2] is proper "only if there is

---

[1] Late in the evening on September 6, 2022, Defendant filed what he termed a "Status and Progress Report Regarding Supplement to Defendant Harrelson's ECF 285 and 267 Filing Regarding Expert Disclosure," ECF No. 291. The court has briefly reviewed the filing. It does not alter the court's rulings set forth here.

[2] Harrelson says in passing that, because his "alleged actions were wholly separate and distinct from the joined co-Defendants," "these parties are improperly joined." Def.'s Mot. to Sever ¶ 25. Federal Rule of Criminal Procedure 8

a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). A defendant bears the burden of demonstrating prejudice from joinder of charges or defendants. *See id.* Defendant here fails to meet his burden.

He first contends that Defendants in the First Trial Group have developed "antagonistic defenses" because counsel "are of different litigation strategy views." Def.'s Mot. to Sever ¶¶ 5, 14. Those differences include "the presentation of evidence in response to the Government's inquiries about stipulations" and "what points to lead with, emphasize, major on to best get the jury's attention and understanding." *Id.* ¶¶ 14–15. But neither concern rises to the level of mutually antagonistic defenses that would justify a severance. "Mutually antagonistic defenses exist when the defense one defendant asserts is irreconcilable with that asserted by another defendant." *United States v. Wilson*, 605 F.3d 985, 1016 (D.C. Cir. 2010). A mere showing of "some hostility" or general antagonism is not enough to warrant severance. *See United States v. Gilliam*, 167 F.3d 628, 635 (D.C. Cir. 1999). In this case, Defendant does not explain at all how differences relating to stipulations or presenting evidence would harm his defense, let alone compromise a trial right or impair the jury from reliably judging guilt or innocence.

Defendant also seems to suggest that a severance is needed because the weight of the evidence against his codefendants is greater than it is against him. *See* Def.'s Mot. to Sever ¶ 26 (arguing he is "different from the other defendants"). He says that, unlike other Defendants, "he made no statements leading up to or including Jan 6" to support his participation in a conspiracy,

---

permits joinder of multiple defendants and offenses "if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." FED. R. CRIM. P. 8(a). "Rule 8 has generally been construed liberally in favor of joinder." *United States v. Richardson*, 161 F.3d 728, 733 (D.C. Cir. 1998). Charging a seditious conspiracy and a conspiracy under 18 U.S.C. § 1512(k), the indictment easily meets the Rule 8(b) standard insofar as it joins Harrelson with the First Trial Group Defendants. *See United States v. Spriggs*, 102 F.3d 1245, 1255–56 (D.C. Cir. 1996) (holding Rule 8(b) satisfied from the face of the indictment where it "alleges that all defendants participated in a single conspiracy" with a shared goal).

no weapons were seized from his car or home, and he made a late decision to come to Washington, D.C., on January 6th. *Id.* ¶¶ 26–28. Even if these facts are established at trial, Defendant has failed to establish the kind of "dramatic disparity of evidence" that cannot be cured by jury instructions. *United States v. Slade*, 627 F.2d 293, 309 (D.C. Cir. 1980) ("Absent a dramatic disparity of evidence, any prejudice caused by joinder is best dealt with by instructions to the jury to give individual consideration to each defendant.").

Finally, Defendant alludes to an aspect of his defense meant to show that agent provocateurs were responsible for the breach of the U.S. Capitol Building on January 6th. Def.'s Mot. to Sever ¶ 36. As discussed below, it remains unclear to the court how such a defense can be sustained when there appears to be no dispute that Defendant entered the Capitol on that day. But even so, Defendant has not explained how the agent-provocateur defense is mutually antagonistic with that of other Defendants. To the contrary, he claims that the evidence he intends to introduce "will not only prove his innocence, but it will . . . exculpate the government, including law enforcement agencies, police and almost *all rally attendees*." *Id.* ¶ 34 (emphasis added). Such a defense, if permitted, would seem to complement that of other defendants, not conflict with it.

Defendant's motion to sever is therefore denied.

### B.      Motion in Limine

Defendant seeks to exclude from the trial proceedings 11 categories of evidence and argument. *See* Def.'s Mem. of Law in Supp. of Mot. in Limine to Exclude Inadmissible or Unduly Prejudicial Anticipated Trial Evid., ECF No. 269 [hereinafter Def.'s Mot. in Limine]. His challenges appear to rest primarily on the assertion that the probative value of the challenged evidence is substantially more prejudicial than probative. *See id.* at 1–2 (citing FED. R. EVID. 403).

To the extent any of Defendant's challenges requires a Rule 403 balancing (not all do), the court finds it favors admitting the evidence or allowing the argument.

1.     *Evidence relating to Proud Boys.*   Defendant's request to foreclose the government from introducing evidence referencing the Proud Boys is denied.  *See id.* at 4–5.  The government does not intend to prove that Defendants "entered into an alliance and led an attack on the U.S. Capitol."  Gov't Opp'n to Def.'s Mot. in Limine, ECF No. 273 [hereinafter Gov't Opp'n to Mot. in Limine], at 1–2.  The government, however, shall be permitted to introduce evidence referencing communications with or about the Proud Boys to the extent that such communication is shown to have been made in furtherance of a charged conspiracy or as an admission of any particular Defendant.  Such evidence is, at least, relevant to the alleged planning and preparation by Defendants for the events of January 6th and bears on their states of mind.

2.     *Aiding and abetting.*   Defendant asks the court to "order that the prosecution [] not introduce evidence, argument or criminal claims of aiding and abetting."  Def.'s Mot. in Limine at 5.  But the indictment charges Defendant with aiding and abetting the destruction of property.  *See* Indictment, ECF No. 167 [hereinafter Indictment], at 36.  Evidence to support such theory is therefore plainly admissible.

3.     *Oath Keepers did not "lead" an attack on the Capitol.*   Defendant's effort to foreclose this argument is denied.  The government has said it will not argue that the Oath Keepers "were the very first to breach the exterior fences or to enter the Capitol on January 6."  Gov't Opp'n to Mot. in Limine at 3.  This concession effectively moots Defendant's request.

4.     *Attempts to Prevent the Transfer of Presidential Power.*   Defendant asserts that the government should not be able to argue or present evidence that Defendants "conspired to or attempted to prevent (whether by force or not) the transfer of presidential power on or about

January 6, 2021, or on January 20, 2021." Def.'s Mot. in Limine at 8.  He so contends because, on January 6th, no transfer of power occurred and, on January 20th, Defendants could not have interfered with the transfer of power because the change of Presidents happened by operation of law. *See id.* at 8–9.  But this argument misconstrues the indictment.  Defendants are charged with delaying by force the execution of the laws on January 6th by impeding the certification of the Electoral College vote by Congress.  They also stand accused of opposing by force the authority of the Government of the United States during the period of the conspiracy, which extends up to January 20th.  Indictment ¶¶ 15, 134.  Surely the government can argue what the indictment charges.

5. *Res ipsa loquitur*.  Defendant asks that the concept of *res ipsa loquitur* not be introduced at trial.  Def.'s Mot. in Limine at 9.  Of course, it will not be: it is a principle of tort law that has no place in a criminal trial.

6. *Restricted area on Capitol grounds.*  Here, Defendant asks the court to preclude the government from making claims about a restricted area in and around the Capitol grounds "without first laying a foundation by solid evidence as to what signs, postings, or other notice was provided as to the boundaries of such restricted area." *Id.* at 10.  But Defendants are not charged with any offense an element of which is their presence within a restricted area. *See, e.g.*, 18 U.S.C. § 1752.  In any event, evidence establishing the existence of a restricted area around the Capitol grounds on January 6th is plainly relevant and admissible to place Defendants' alleged acts in context and to show that the Capitol grounds were not open to the public on January 6th.

7. *Guilt by association.*  Defendant asks the court to preclude evidence or argument of "guilt by association," Def.'s Mot. in Limine at 11, but Defendants are not charged

with crimes based on mere association.  They are charged with conspiracies, and so their relationships with charged and uncharged defendants lies at the heart of the government's case.

    8.    *Stacks.*  Defendant seeks to preclude the government from telling the jury that he entered the Capitol Building on January 6th as part of a "stack." *Id.* at 11.  The government, however, has proffered that "[t]he word 'stack' is used in the military and law enforcement to refer to a tactical formation used by military and law enforcement."  Gov't Opp'n to Mot. in Limine at 5.  There is therefore an evidentiary basis for referring to Defendant's mode of entry as a "stack."

    9.    *Breach.*  Believing that use of the word "breach" "falsely and deceptively" describes his entry into the Capitol Building on January 6th, Defendant moves to exclude it.  Def.'s Mot. in Limine at 11–12.  But it is for the jury to decide whether Defendant "breached" the Capitol Building that day.

    10.    *Unconnected and inaudible phone calls.*  Defendant requests the court order the government to "lay a foundation of actual, real phone calls . . . between persons which resulted in actual conversations." *Id.* at 12–13.  The basis of Defendant's request appears to be his view that cellular communication systems were "jammed" on January 6th and therefore any alleged telephone call could not have resulted in "actual conversations." *See id.*  The government responds that it will provide evidence to support actual conversations through call logs and witness testimony.  Gov't Opp'n to Mot. in Limine at 6.  Such evidence is plainly relevant and admissible. Defendant is, of course, free to offer evidence that would show that actual conversations among co-defendants never occurred or could not have occurred.

    11.    *Fragments of incomplete conversations.*  Finally, Defendant provides the court with a litany of communications as to which he lodges a rule of completeness objection. *See id.* at 13–23.  The court cannot evaluate these objections in a vacuum.  Defendant must specifically

identify the communications at issue, explain how the government's proof is incomplete, and propose what additional portions he seeks to admit in order to complete the evidence.  He has not done so.

### C.       Motion to Compel Production of Exculpatory Evidence

Defendant's final motion seeks to compel production of 12 categories of evidence that he claims not to have received and, if produced, would exculpate him.  Def.'s Mem. of Law in Supp. of Def.'s Mot. for Required Disclosure of Exculpatory Information, ECF No. 266 [hereinafter Def.'s *Brady* Mot.].  The court will not go through each of the 12 requests but will address them summarily.

Defendant seeks further opportunity to inspect the Capitol Building and grounds and demands technical specifications on the Capitol's Columbus Doors and East Rotunda Doors. *See id.* at 17–18.  The reason for the request appears to be that he wishes to argue that Defendants did not force open any points of entry.  *See id.*  But the government's theory is not that Defendants were the first through any doors into the Capitol Building.  *See* Gov't Opp'n to Def.'s *Brady* Mot., ECF No. 272 [hereinafter Gov't Opp'n to Def.'s *Brady* Mot.], at 5–6.  The doors were opened from the inside by rioters and kept open by them.  *See id.*  Defendant's request therefore does not seek exculpatory information and, in any event, the government says he already has it.[3]

Much of Defendant's motion seeks information on other bad actors that he claims actually committed the offenses with which Defendant is charged.  *See* Def.'s *Brady* Mot. at 21 ("Who 'Led' the 'Attack' on the U.S. Capitol?"), *id.* at 23 ("Suspicious Actors Physically Near to Defendant Harrelson at Key Moments"), *id.* at 27 ("Actors who actually did what Harrelson is

---

[3] Defendant alludes to questions about police operations that were not answered during tours taken by his counsel of the Capitol Building.  Def.'s *Brady* Mot. at 20; Def.'s Reply in Support of Def.'s *Brady* Mot., ECF No. 283, at 10.  It is unclear to the court the precise information that Defendant sought but was denied.  If he cannot get it from the government, then he can return to the court.

erroneously accused of"). It is true that alternative-perpetrator evidence can constitute exculpatory evidence. *See United States v. Benbow*, 709 F. App'x 25, 27 (D.C. Cir. 2018) ("Defendants have a constitutional right to present a complete defense, and this includes presenting reasonable third-party-perpetrator evidence."); *United States v. Wilson*, 720 F. Supp. 2d 51, 65 (D.D.C. 2010) (holding that "police reports identifying other possible leads or suspects could constitute *Brady* material"). But the charged offenses are a poor fit for a third-party perpetrator defense. This is a not a homicide case in which the question is "who shot John"? Rather, Defendant is accused of entering specified conspiracies consisting of unique individuals, time periods, objectives, and overt acts. Either these Defendants committed the charged offenses or they did not. No third party can have committed the seditious conspiracy charged as defined in Count One or the conspiracy to interfere with an official proceeding as defined in Count Two. The alleged offenses are particular to *these* Defendants. Thus, it is not a defense that others on January 6th might bear greater culpability for initially breaching the Capitol Building, urging the crowd to storm past police lines, or injuring police officers. Such acts committed by others do not exculpate Defendants of the crimes with which they are charged. Evidence of those acts is not *Brady* material.[4]

Other evidence sought by Defendant is not subject to compelled disclosure under *Brady*. Proof concerning the perimeter of the restricted area and signs designating such area, *see* Defs' *Brady* Mot. at 20, while generally relevant, cannot exculpate Defendant. He is not charged with any crime requiring that he be within restricted grounds. Similarly, Defendant demands evidence showing that he and other Oath Keepers did not assault police officers. *Id.* at 22–23. Evidence depicting or reporting on Defendants' movements and interactions with police officers on

---

[4] If Defendant believes, based on his own knowledge or review of the video evidence, that there were persons in the crowd who would provide exculpatory evidence about *his behavior*, then that evidence must be disclosed. However, given the thousands of people who were on the Capitol grounds on January 6th, it would behoove Defendant, if he has not done so already, to identify who those people might be and whether the government knows their identities.

8

January 6th is material to the preparation of the defense.  The government has produced that evidence.  Gov't Opp'n to Def.'s *Brady* Mot. at 8.

Finally, Defendant seeks information about threat assessments prior to January 6th and communications between Secret Service agents and other government officials.  Def.'s *Brady* Mot. at 30, 33.  Defendant does not articulate how these materials might be exculpatory.  He seems to think that threats posed by other bad actors caused the Joint Session to recess on January 6th, but that argument misses the point.  Defendants are accused of interfering with the Joint Session at the time they entered and remained in the building because their entry and activities that day prevented Congress from carrying out its constitutional and statutory responsibilities.  That others were the original cause for Congress's decision to recess or also kept Congress from reconvening is beside the point.  Finally, Defendant offers only speculation as to how deleted Secret Service messages would help his defense.[5]

### III.

For the foregoing reasons, Defendant Harrelson's motions to sever, to exclude evidence *in limine*, and to compel disclosure of exculpatory evidence are denied.

Dated:  September 7, 2022

Amit P. Mehta
United States District Judge

---

[5] Defendant also makes a general demand for information purportedly required for his experts.  Def.'s *Brady* Mot. at 31–33.  The deadline for disclosing defense experts has passed, and the court is not aware of any late disclosure made by Defendant.  The court is prepared to revisit the request for additional information if Defendant actually provides the required notice, the proposed expert testimony is relevant, and the evidence sought supports a valid defense.