## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 22-cr-15 (APM) |
| | : | |
| v. | : | |
| | : | |
| ELMER STEWART RHODES III, | : | |
| KELLY MEGGS, | : | |
| KENNETH HARRELSON, | : | |
| JESSICA WATKINS, and | : | |
| THOMAS CALDWELL, | : | |
| | : | |
| Defendants. | : | |

### SUPPLEMENT TO GOVERNMENT'S OPPOSITION TO DEFENDANTS' JOINT MOTION IN LIMINE REGARDING ANTICIPATED TRIAL EVIDENCE RE: ZELLO COMMUNICATIONS

The government respectfully submits this supplement to address questions raised at the hearing on September 14, 2022, regarding the defendants' motion in limine, ECF No. 280, to preclude the Zello communications included in Government Exhibit 1073.1. This supplement addresses (1) factual questions about the connections between Defendant Jessica Watkins, other Zello users, and other defendants, and (2) the legal question of whether a defendant-declarant is "unavailable" to the government pursuant to Federal Rule of Evidence 804(a), such that the defendant-declarant's statements may be admissible against her codefendants pursuant to Rule 804(b)(3).

1. **Factual Answers**

   a. **Identity of Airborne America and Connections Between Conspirators.**

User Airborne America is Person 33, an Oath Keeper member from Illinois who is close with Person 32. According to the records received from Zello, Person 33, like both Watkins and Person 32, subscribed to the channels Stop the Steal J6 and J6 BOTG Team on the evening of

January 5, 2021.  Person 33 logged into Zello on January 6 at 1:05 p.m. (just a few minutes after Watkins logged in).  Recall that Person 32, on the Zello recording, asked Watkins to confirm whether patriots had breached the Capitol and were "still fighting police" (at 2:19 p.m.); encouraged "motherfucking patriots" to sit in congresspeople's chairs in the chamber (at 2:20 p.m.); instructed "Jess, pull as much intel as you can" (at 2:26 p.m.); and told Watkins, who had just reported being in the main dome with police "throwing grenades" and "freakin shooting people with paintballs," to "Get it, Jess.  Do your shit. This is what we fucking lived up for.  Everything we fucking trained for" (at 2:46 p.m.).

The extraction from Watkins' phone shows that she and Person 33 exchanged multiple messages between November 2020 and January 2021.  On November 11, Watkins sent Person 33 the identifying information for Donovan Crowl (co-conspirator charged in case 21-cr-28).  Person 33 then sent a message to Defendant Rhodes with results of Crowl's vetting:

> Good evening sir Jess from Ohio reached out to me to vett Donovan Crowl from Ohio ex Marine training master no felonies , no foid at the present time is in process and is planning to pay dues by Friday married kids no bad background or anything of concern from my vetting seams to be a very squared away vet sir how would you like me too follow up on this situation he is planning on op in DC with Jess Ohio if accepted[.]

A few hours later, Person 33 messaged Watkins that Crowl was vetted and "good to go."  Watkins then told Person 33 that Rhodes had "upgraded me tonight," so that Watkins could do her own vetting for the Oath Keepers going forward.  She asked Person 33 for guidance: "How do I do it?"  The two exchanged periodic messages until around January 10, 2021, when they exchanged each other's ProtonMail email addresses (presumably so that they could continue to communicate securely, as ProtonMail is end-to-end encrypted and hosted overseas).

Finally, recall that the first public reporting of the Zello recording was the *Guardian* article on January 13, 2021.  Watkins likely followed that news closely, because the next day she sent a message to Person 32: "The Washington Post reposted The Guardians' story about Zello."  This message suggests that Watkins and Person 32 had otherwise been in communication about their activities on January 6 and the Zello recording specifically.

      b.  **Watkins and Her Co-Conspirators Acted In Response to Information Obtained From Zello Participants**.

Although Watkins was the only charged defendant on the Zello channel, the charged defendants in close proximity to her—Meggs on the way to the Capitol, and Harrelson and Meggs while at the Capitol—were often near enough to her to hear the audio coming out of her phone.  As explained in the government's opposition, and demonstrated in Exhibits 192.V.3 and 192.V.4, audio from the Zello channel was audible on video Watkins filmed outside and inside the Capitol.

There is no question that the Zello participants saw themselves as part of Watkins' team on the ground, and Watkins and her coconspirators benefited from their information.  First, the other Zello participants repeatedly referred to themselves (and Watkins) as "we," indicating that they were working together.  *See, e.g.,* Person 32: "Get it, Jess.  Do your shit. This is what *we* fucking lived up for.  Everything *we* fucking trained for" (at 2:46 p.m.) (emphasis added).  Second, and critically, participants on the Zello channel, some of whom were apparently watching the events remotely and others who were present in D.C., provided up-to-the-minute information that helped guide Watkins, Meggs, Harrelson and other conspirators as they approached the Capitol.  These other Zello participants informed the conspirators of the movements of other rioters ("Barricades are being challenged" at 1:48 p.m.), movements of police officers ("I just witnessed about four vans full of riot control turning left of Madison onto 3rd" at 2:24 p.m.), and the rapidly

3

unfolding situation in the House and Senate chambers (e.g., "They've called the House back again" at 2:27 p.m.).  This "eye in the sky" information is akin to law enforcement aerial teams relaying vital information to help ground teams navigate dangerous circumstances—just like Watkins and her coconspirators faced on January 6 as they marched through throngs of other rioters and riot police to breach the Capitol.

Notably, at 2:38 p.m., President Trump issued a Tweet about Capitol Police: "Please support our Capitol Police and Law Enforcement. They are truly on the side of our Country. Stay peaceful!" Five minutes later, at 2:43 p.m., a user reported that Tweet to the Zello channel: "Trump just tweeted, Please support our Capitol Police, they are on our side, do not harm them." Immediately afterwards, 1%Watchdog interpreted that Tweet for the Zello channel participants, telling them: "That's saying a lot by what he didn't say.  He didn't say not to do anything to the Congressmen."  Just a few minutes later, Watkins, after reporting her location and movements to the Zello channel, moved out of the Rotunda and towards the Senate, eventually coming within feet of the Senate Chamber where Vice President Pence and senators had been debating the Electoral College vote.

Watkins' own statements and actions, some in response to the information, directives, and encouragement relayed to her by the other Zello participants, are therefore evidence both of her own intent and the intent of her coconspirators.

## 2. Legal Answers

At argument on the motion, the Court asked whether Watkins was truly "unavailable" under Rule 804(a) given that she might choose to testify in the defense's case.  The answer is yes, because the unavailability decision is made during the presentation of the proponent's evidence,

not for the trial as a whole.  One reason for the unavailability requirement is that, if the prosecution

introduces "a confession made by an alleged accomplice," a defendant ordinarily has the right "to

confront and cross-examine the declarant."  *Lee v. Illinois*, 476 U.S. 530, 542 (1986).  The

unavailability of a declarant means that the declarant's statement is "presumptively unreliable,"[1]

but cross-examination of the declarant would protect the defendant from the "danger against which

the Confrontation Clause was erected."  *Id*. at 543.  In other words, the fact that Watkins may

testify only serves to protect—not undermine—the other four defendants' rights.

A defendant-declarant is "unavailable" to the government pursuant to Rule 804(a), such

that the government, in its case-in-chief, may admit against the other defendants the defendant-

declarant's statements against interest pursuant to Rule 804(b)(3).  In *United States v. Stratton*,

779 F.2d 820, 828 (2d Cir. 1985), the Second Circuit, when confronted with a factually analogous

situation, affirmed the trial court's admission of a defendant-declarant's statement against all other

defendants.  The government tried four defendants together on charges that included conspiracy

to distribute drugs.  *Id.* at 823.  In a recorded conversation with an undercover agent, one defendant

implicated himself and his three codefendants.  *Id.* at 828.

The court found that the statement was properly admitted against the other three

codefendants as a statement against the defendant-declarant's interest under Rule 804(b)(3) (as

well as a statement in furtherance of the conspiracy under Rule 801(d)(2)(E)).  The defendant-

declarant "could not be called by the Government as a witness and was therefore 'unavailable.'"

---

[1] This is the reason for Rule 804(b)(3)(B), requiring "corroborating circumstances that clearly indicate [the statement's] trustworthiness" before a statement can be admitted.  Such circumstances are present here, given the other evidence of Watkins' actions and intent.

*Id.* The fact that the defendant-declarant might have later become "available" by testifying in his own defense did not factor into the court's decision. Like here, the critical time for the unavailability analysis under Rule 804 is during the presentation of that party's case. During the government's case-in-chief, when the government seeks to admit a defendant-declarant's statement under Rule 804(b)(3), any defendant is, by definition, unavailable to the government.

Similarly, in *United States v. Lieberman*, 637 F.2d 95, 103 (2d Cir. 1980), the government jointly tried two defendants in a drug conspiracy. While the court found that one defendant-declarant's statements were not made in furtherance of the conspiracy, the statements were against that defendant-declarant's penal interest and were thus admissible against the other defendant. *Id.* "There is no question that [the defendant-declarant] was unavailable to testify. He was a defendant, and the government could not call him as a witness." *Id.*

Finally, in *Lee*, a jointly tried murder case, the Supreme Court, in holding that a statement was insufficiently reliable to be admissible under Rule 804(b)(3)(B), never directly addressed the question of whether a defendant-declarant was "unavailable" to the prosecution under Rule 804(a). But in dissent, four justices, while disagreeing with the reliability decision, squarely explained how the defendant-declarant was, "[f]or all practical purposes, . . . unavailable as a prosecution witness. Although physically present in the courtroom, he clearly would have invoked his privilege against self-incrimination if called to the stand to describe the murders he had committed with petitioner." *Id.* at 549 (Blackmun, J., dissenting).

Watkins, as the defendant-declarant, is therefore unavailable to the government during the presentation of the government's evidence during its case-in-chief. Her statements against her

6

penal interest—as well as her statements in furtherance of the conspiracy—are therefore admissible against her codefendants.

## CONCLUSION

The government respectfully submits that the Zello recording, Government Exhibit 1073.1, should not be excluded.  The listed communications that took place between 1:48 to 1:52 p.m., 1:56 to 2:00 p.m., 2:30 to 2:36 p.m., and 2:39 to 2:46 p.m. should be admitted against all defendants, as they contain statements falling with Federal Rules of Evidence 801(d)(2)(A) (opposing party statement), 803(1) (present sense impression), 803(3) (statement of future intent), 804(b)(3) (statement against interest), 801(d)(2)(E) (coconspirator during and in furtherance of conspiracy), and/or 801(d)(2)(B) (adoptive admission).  The listed communications between 2:01 to 2:24 p.m. and 2:26 to 2:30 p.m. should be admitted against Defendant Watkins only, with a limiting instruction, as they provide context for Watkins' other statements and/or elucidate Watkins' state of mind.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By:        /s/
Jeffrey S. Nestler
Assistant United States Attorney
D.C. Bar No. 978296
Ahmed M. Baset
Troy A. Edwards, Jr.
Louis Manzo
Kathryn Rakoczy
Assistant United States Attorneys
U.S. Attorney's Office for the District of Columbia
601 D Street NW
Washington, D.C. 20530

7

                                  /s/
                           _____
                           Justin Sher
                           Alexandra Hughes
                           Trial Attorneys
                           National Security Division,
                           United States Department of Justice
                           950 Pennsylvania Avenue NW
                           Washington, D.C. 20004