IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : CRIMINAL NO. 22-cr-15 (APM) |
| v. | : |
| ELMER STEWART RHODES III, | : |
| KELLY MEGGS, | : |
| KENNETH HARRELSON, | : |
| JESSICA WATKINS, and | : |
| THOMAS CALDWELL, | : |
| Defendants. | : |

**UNITED STATES' MOTION IN LIMINE CONCERNING CERTAIN
EVIDENCE REGARDING DEFENDANT THOMAS CALDWELL**

Defendant Thomas Caldwell has presented to the jury, through opening statement and cross-examination, a narrative that Thomas Caldwell was focused on groups like "antifa" at the exclusion of anyone related to the 2020 presidential election. That narrative is incomplete. Caldwell has opened the door to his "death list" of particular election workers that the Federal Bureau of Investigation seized from Caldwell's house at the time of his arrest.

I.   **Procedural Background**

On July 8, 2022, the government provided the defendants with notice that it intended to admit certain evidence against Thomas Caldwell, including evidence that, during the time of the charged conspiracy, Caldwell possessed a "death list" that included particular election workers related to the 2020 presidential election. ECF No. 187 at 24-26; ECF No. 251 at 2-5. This evidence, the government argued, illustrated Caldwell's intent to commit violence against

1

individuals connected to the federal presidential election in furtherance of his charged goal of stopping the transfer of power. ECF No. 251 at 3-4. Caldwell opposed that evidence, dismissing it as a "doodle pad." ECF No. 217 at 5; ECF No. 256 at 1-3. At a hearing on August 30, 2022, defendant Caldwell supplemented his argument, noting that he would "gladly agree that everybody was upset at the result of the election. They certainly were upset that President Trump lost and they thought he was robbed." Aug. 30, 2022 Hearing Tr. at 49.

On October 3, 2022, during opening statements, Caldwell's counsel stated, "And I should point out, ladies and gentlemen, the Oath Keepers and Mr. Caldwell, their number one concern was antifa." October 3, 2022 Trial Tr. at 1219. He added:

> But I'm going to tell you what, ladies and gentlemen: The Defendant, Mr. Caldwell, the evidence is going to show there was a real fear that antifa would attack Trump protesters. There was a fear. The evidence will show that at that Trump rally on December 12th, there were actually five Trump supporters that were stabbed that evening. . . . But somebody who's much older than me, ladies and gentlemen, they have fears. They come to a city they don't know very well. They see things on Fox News and Newsmax. And they get fearful.

*Id*. at 1220. His counsel concluded: "And all they're doing is trying to protect people, not trying to attack anything." *Id*.

On October 4, 2022, Caldwell's counsel cross-examined the government's witness, FBI Special Agent Michael Palian. During cross-examination, counsel asked, "In fact, sir, you understand that the disagreement in court seems to be the position the government has taken about a plot to stop the election, and Mr. Caldwell and the defendants are claiming Antifa, concerned about Antifa was what was driving the actions?" October 4, 2022 Trial Tr. at 1684. The government objected. *Id*. Counsel continued, "Sir, you would agree, you obviously heard the defendants' opening arguments where we referenced Antifa; right?" Counsel stressed that

Caldwell had done "recce" on "BLM plaza . . . identified as an area where there was some Antifa activity in 2020 going into 2021." *Id* at 1685. The government objected. *Id*. Counsel then asked whether Special Agent Palian agreed with another FBI Special Agent that the "Oath Keepers and other individuals, when they went to the Million MAGA March on November 14th and the second protest on December 12th, didn't . . . have any evidence that that was a dry run for January 6th?" *Id*. at 1686. The government objected, arguing that this was hearsay, and the Court sustained the objection. *Id*. Later, counsel asked questions about an "op plan" law enforcement discovered on Caldwell's computer: "Sir, isn't it true the op plan that Mr. Caldwell was referencing was an op plan to protect against violence by Antifa?" *Id*. at 1689. Counsel concluded, "Okay. So the whole entire op plan you've been referencing, or the government's been bringing up regarding Mr. Caldwell appears to be something regarding Antifa; correct?" *Id*. at 1692. Counsel then admitted the "op plan" into evidence. *Id*.

## II.     Legal Background

It is well-established that "cross-examination of a witness may open the door for the introduction on redirect examination of matters supportive of the redirect examiner's case, which would not have been admissible originally on direct examination." 2 Wharton's Criminal Evidence § 8:27 (15th ed.); *see also United States v. Gauvin*, 173 F.3d 798, 803 (10th Cir. 1999) (concluding the "prosecution's question was thus properly asked as [defense counsel] had previously opened the door to this line of questioning" to law enforcement officer); *United States v. Primrose*, 718 F.2d 1484, 1492-93 (10th Cir.1983) (concluding the trial court did not abuse its discretion in finding "proper redirect because defense counsel had opened the door on cross"); *United States v. Jackson*, 429 F.2d 1368, 1373 (7th Cir. 1970); *Harrison v. United States*, 387 F.2d

614, 615 (5th Cir. 1968).

Relatedly, trial courts have discretion to permit parties to introduce otherwise inadmissible evidence "when it is needed to rebut a false impression that may have resulted from the opposing party's evidence." *Henderson v. George Washington Univ.*, 449 F.3d 127, 141 (D.C. Cir. 2006) (citing *United States v. Rosa*, 11 F.3d 315, 335 (2d Cir. 1993)); *see also United States v. Brown*, 921 F.2d 1304, 1307 (D.C. Cir. 1990) ("Under the 'curative admissibility' doctrine, the introduction of inadmissible or irrelevant evidence by one party justifies or 'opens the door to' admission of otherwise inadmissible evidence."). Indeed, the "government often successfully argues for the right to introduce evidence in response to irrelevant or inadmissible testimony going to the issue of intent." *United States v. Baird*, 29 F.3d 647, 654 (D.C. Cir. 1994) (citations omitted).

### III.  Argument

The government's introduction of the "death list" is now proper for at least two reasons based on Caldwell's opening statement and cross-examination of Special Agent Palian.

#### A. The Nature of Caldwell's Intent

Whether Caldwell was harmless and only focused on self-defense in November and December 2020 is now squarely in play on redirect examination of Special Agent Palian. Caldwell's counsel has presented a benign, "fearful" man quoting the *Princess Bride*, scouting Porta Potties, and reconnoitering a "gentleman's club." October 4, 2022 Trial Tr. at 1682. As to his intent during the charged conspiracy, counsel has stressed that Caldwell's "number one" concern was "antifa." October 3, 2022 Trial Tr. at 1219. In fact, counsel explicitly offered that the "disagreement in court" is that the government believes Caldwell had a "plot to stop the

4

election," while Caldwell claims that "concern[s] about Antifa was what was driving the actions." October 4, 2022 Trial Tr. at 1684. According to counsel, all Caldwell was trying to do was "protect people, not trying to attack anything." October 3, 2022 Trial Tr. at 1220.

Caldwell has opened the door on redirect examination to evidence that he created a "death list" and included federal presidential election workers during the charged conspiracy. As detailed in the government's 404(b) notice (ECF No. 187 at 24-26), these particular election employees were the subject of widely circulated conspiracy theories that falsely asserted they fraudulently helped President Joseph Biden succeed. Caldwell is charged with conspiring to keep President Biden from assuming the presidency by any means necessary, up to and including through the use of force. Evidence that Caldwell intended to commit violence against these particular employees is directly relevant to that criminal objective and flatly contradicts Caldwell's conjured impression that his attention and actions were narrowly tailored to rally attendance and self-defense against "antifa" individuals unrelated to the election process.

And Caldwell has opened the door to this evidence, in part, through statements and questions on cross-examination that were either irrelevant or included hearsay that the government objected to. By highlighting the central "disagreement in court" between the "government's position" about election-driven actions and Caldwell's theory about antifa-driven actions, Caldwell introduced irrelevant legal theories through a law enforcement witness. Similarly, Caldwell introduced alleged hearsay statements of other FBI agents in an effort to impress upon the jury that Caldwell was not focused on the election process in either November or December 2020. The so-called "curative admission" doctrine does not allow Caldwell to abuse the Court's ruling on the inadmissibility of the "death list" by inappropriately introducing theories of intent to

5

the jury that the "death list" so clearly rebuts.

## B. The FBI's Search of Caldwell's Residence

Caldwell's counsel also focused heavily on the FBI's search of his house and whether the FBI discovered anything incriminating, thereby opening the door to what the FBI in fact discovered. During his opening statement, Caldwell's counsel repeatedly called the government's prosecution a "bait and switch" from the beginning of the investigation to now. October 3, 2022 Trial Tr. at 1218-19. On cross-examination, Caldwell's counsel asked Special Agent Palian, "Well, sir, certainly if you had something incriminating that would've shown that Mr. Caldwell was engaging in military training on his property, certainly you would show it to the jury; right?" *Id.* at 1635. Later, he again asked Special Agent Palian to return to the jury with any other evidence he located that was "incriminating." October 4, 2022 Trial Tr. at 1683. (The Court, of course, sustained an objection to that question.)

Beyond merely suggesting the FBI found nothing incriminating in Caldwell's house, his counsel suggested that Special Agent Palian – and the FBI generally – was wrong to believe that Caldwell was dangerous or was focused on stopping the transfer of power after the search. For instance, counsel asked several questions about the FBI's review of Caldwell's "computer, phones, and other correspondence," *id.* at 1648, and whether the FBI located "any maps that led people to lawmakers' houses or residences?" *Id.* at 1668. More pointedly, he later asked "would you agree you got it wrong when you thought that Mr. Caldwell – his prestrike recce had something to do with stopping an election?" *Id*. at 1683. Referring to an "op plan" found on one of Caldwell's computers and referenced in one of his notepads recovered by the FBI, Caldwell's counsel asked, "So the whole entire op plan you've been referencing, or the government's been bringing up

6

regarding Mr. Caldwell appears to be something regarding Antifa; correct?" *Id*. at 1692. The point of these and other questions was to suggest to the jury that the materials found on Caldwell's computer and notepad recovered at his house concerned innocuous topics like bathrooms and "antifa," rather than anything to do with "stopping an election." *Id.* at 1691. But the "death list," also found in Caldwell's correspondence in his house, is incriminating and directly relates to "stopping an election." And so it should now be admissible to rebut Caldwell's false impression to the jury that nothing came of the FBI's search of his residence as it relates to his intent and the current charges.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By: _____
Troy A. Edwards, Jr.
Assistant United States Attorney
N.Y. Bar No. 5453741
Ahmed M. Baset
Louis Manzo
Jeffrey S. Nestler
Kathryn Rakoczy
Assistant United States Attorneys
U.S. Attorney's Office, District of Columbia
601 D Street NW
Washington, D.C. 20530

_____/s/_____
Alexandra Hughes
Justin Sher
Trial Attorneys
National Security Division,
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20004