**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 22-cr-15 (APM)** |
| | : | |
| **v.** | : | |
| | : | |
| **ELMER STEWART RHODES III,** | : | |
| | : | |
| **KELLY MEGGS,** | : | |
| | : | |
| **KENNETH HARRELSON,** | : | |
| | : | |
| **JESSICA WATKINS, and** | : | |
| | : | |
| **THOMAS CALDWELL,** | : | |
| | : | |
| **Defendants.** | : | |

**UNITED STATES' MOTION IN LIMINE CONCERNING CERTAIN**
**STATEMENTS AND THE ATTORNEY-CLIENT PRIVILEGE**

On Friday, October 7, 2022, the government moved to admit certain December 2020 messages between Stewart Rhodes and co-conspirator Kellye SoRelle.  Defense counsel for Rhodes and Kelly Meggs objected, claiming that these and other similar messages may be subject to attorney-client privilege.   They are not.

**I.      Procedural Background**

On January 12, 2022, the defendants in this case were indicted on charges of, among others, seditious conspiracy, in violation of 18 U.S.C. § 2384; conspiracy to obstruct an official proceeding, in violation of 18 U.S.C. § 1512(k); and tampering with documents or proceedings, in violation of 18 U.S.C. § 1512(c)(1).   ECF No. 1.   On August 30, 2022, co-conspirator Kellye SoRelle was indicted on charges of, among others, conspiracy to obstruct an official proceeding, in violation of 18 U.S.C. § 1512(k).   Case No. 22-cr-290, ECF No. 1.

At the pretrial conference on September 14, 2022, counsel for Kelly Meggs raised the prospect of advancing an advice-of-counsel defense at trial. According to the Court, this was the "first time the court . . . had heard of this possibility." ECF No. 318 at 1. On September 15, 2022, the Court issued an Order, requiring any defendant intending "to assert an advice-of-counsel defense as to any count of the Indictment" to make such disclosure by September 21, 2022. *Id.* The Court imposed this requirement to ensure adequate time to "assess the viability of the defense," *Id.* at 1 (citing *United States v. West*, 392 F.3d 450, 456-57 (D.C. Cir. 2004); *United States v. DeFries*, 129 F.3d 1293, 1308 (D.C. Cir. 1997)), and to "timely compel the disclosures necessary to allow the government to prepare for the defense," *Id.* at 2 (citing *United States v. Crowder*, 325 F. Supp. 3d 131, 138 (D.D.C. 2018)). According to the Court, the "[d]efendants have had ample time to determine whether to advance the defense," noting that they have been on notice for at least six months in light of certain statements of offense that had been publicly docketed since March 2022. *Id.* at 2. "Failure to provide the notice," the Court admonished, "may lead the court to preclude a defendant from asserting such a defense." *Id.* at 3 (citing *Crowder*, 325 F. Supp. 3d at 138).

On September 21, 2022, Stewart Rhodes, Kelly Meggs, and Kenneth Harrelson filed a notice that "it is reasonably likely that the defense of advice of counsel may be presented in the trial of this case." ECF No. 333 at 1-2. The defendants asserted they "lacked any unlawful intent as to the counts in the superseding indictment and acted in good faith in all relevant respects pursuant to advice received by attorney Kellye SoRelle." *Id.* at 2. Because the government's filter team reviewed SoRelle's phone and withheld certain communications from the defendants and prosecution team, the defendants claimed they were "not in a position" to determine whether to rely on an advice-of-counsel defense. *Id.* at 2 n.1.

2

On October 6, 2022, the government's filter team made available to the defendants a privilege log documenting its efforts to filter SoRelle's phone and the actual communications it had filtered and withheld from both the defendants and the prosecution team.  And, on October 10, 2022, the government's filter team made available to Rhodes the isolated set of communications it had filtered from Rhodes' phone and withheld from the prosecution team; this simply served to highlight potentially relevant messages that the defendants have already possessed in discovery since early July 2022 at the latest.[1]

On October 7, 2022, the government attempted to admit through Federal Bureau of Investigation Special Agent Byron Cody certain December 2020 messages from Rhodes to SoRelle.  Specifically, on December 29, 2020, Rhodes messaged SoRelle:

> This will be DC rally number three.  Getting kinda old.  They don't give a shit how many show up and wave a sign, pray, or yell.   They won't fear us till we come with rifles in hand. . . . Only reason to go is so Trump knows we support him in taking Reg gloves off and kickin ass. . . . That's why I'm going.   It's to send HIM a message.  Not Congress.   I'm done talking to them.

Gov. Exhs. 1.S.737.2818-2820.  Rhodes went on to note that he was going to sleep.  Later, SoRelle did not respond directly to Rhodes' messages but proceeded to discuss their New Year's

---

[1]  The government is also aware that the defendants have asserted that certain other December 2020 messages in their possession are subject to the attorney-client privilege.   The government is aware that some of these messages took place on December 10, 2020, and included Rhodes, SoRelle, and at least three other people.

The prosecution team believes that, although these messages were withheld from production to the prosecution team from SoRelle's phone, they were not withheld from production to the prosecution team from Rhodes' phone.  The government's filter team informed the prosecution team that it employed a broader, more conservative approach to filtering co-conspirator Kellye SoRelle's phone than it employed when filtering other co-conspirators' phones in light of SoRelle's status as an attorney with clients *other than* the charged defendants.  As a matter of prudence, the prosecution team has not reviewed these messages since the defendants raised this issue with the Court.  And the December 10, 2020 messages from Rhodes to SoRelle are not currently on the government's exhibit list.

plans.   Defense counsel objected and asserted that these messages may be subject to attorney-client privilege.   Defense further advised that, because they have reserved the right to assert the advice-of-counsel defense but have not formally asserted it, the defendants had not yet waived any such privilege if it exists.   Later, the Court admonished, "I would like to get this privilege issue resolved next Tuesday [October 11, 2022].   I mean, in other words, whether the defense is going to insist that these communications between Mr. Rhodes and Ms. SoRelle are, in fact, privileged, because if you are, that opens up the next question of whether crime fraud applies or something else."   Oct. 7, 2022, Trial Tr. at 2235-36.

## II.     Kellye SoRelle Background

At approximately 2:00 PM, after court concluded on October 7, 2022, Dan Friedman, a reporter for Mother Jones magazine, tweeted:

> Kellye SoRelle is currently not commenting to press due to the charges against her, but has said: "didn't have an attorney-client relationship with Stewart."   She also said that Rhodes only started referring to her as Oath Keepers' general counsel after Jan. 6 "to CYA."[2]

The record appears to support that timeline.

On November 4, 2020, various publications claimed that SoRelle allegedly recorded a video in which she and others claimed election workers in Detroit, Michigan were committing voter fraud.   The publications referred to SoRelle as a "poll watcher" and "a Texas lawyer and member of Lawyers for Trump."[3]   Indeed, on November 6, 2020, SoRelle described herself

---

[2] *See* https://twitter.com/dfriedman33/status/1578445031299776512.

[3] *See* https://texasscorecard.com/federal/video-wagons-suitcases-and-coolers-roll-into-detroit-voting-center-at-4-am/.

similarly on her own Twitter account as, "mom, attorney, student of life, patriot."[4]   According to various Signal messages and cooperating defendants, members of the Oath Keepers began to provide security for SoRelle around this time.

In December 2020, Rhodes and SoRelle issued two public calls to action.   On December 14, 2020, for example, Rhodes and SoRelle wrote, "We are in a fight, no matter what.   Let's get it done with you as Commander in Chief."   Gov. Exh. 1005.   If President Trump failed to act, Rhodes and SoRelle warned, "we the people will have to fight a bloody revolution/civil war to throw off an illegitimate deep state/Chinese puppet regime."   *Id*.   Rhodes signed the letter, "Stewart Rhodes, Yale 04, Army Airborne veteran."   SoRelle signed the letter, "Kellye SoRelle, Texas attorney and former prosecutor."   And, on December 23, 2020, Rhodes and SoRelle wrote, "If you [President Trump] fail to do your duty, you will leave We the People no choice but to walk in the Founders footsteps, by declaring the regime illegitimate, incapable of representing us, destructive of the just ends of government . . . And, like the Founding generation, we will take to arms in defense of our God given liberty, we will declare our independence from that puppet regime, and we will fight for our liberty."   Gov Exh. 1008   Rhodes signed the letter, "Stewart Rhodes, Founder of Oath Keepers," among other titles.   SoRelle signed, "Kellye SoRelle, Texas patriot lawyer, Former Texas Prosecutor."   *Id*.

On December 29, 2020, Rhodes sent SoRelle the messages at issue, explaining that Congress would not fear them "till we come with rifles in hand."   Gov. Exh. 1.S.737.2818.

---

[4] *See* https://archive.ph/8PtFD.

On January 6, 2021, after approximately 2:00 PM, SoRelle breached the restricted areas of the Capitol grounds with Rhodes.   SoRelle livestreamed herself on Facebook with Rhodes and the Capitol building in the background, stating:

> I want to show y'all something, probably one of the coolest damn things I've seen in my entire life: I'm telling you right now, government, people are pissed, but you guys need to watch.   They broke the line, guys.   People are going.   This isn't a bad thing, and you can't be scared.   This is what you do.   Otherwise you end up as Communist little peasants, in little societies where you have no ability, no voice, no vote—you're basically slaves.   But this is what happens when the people are pissed—they rise up.   So you know what, guys?   It's pretty amazing.   You guys should enjoy it.   They broke the barrier, they got up there, they may end up inside before it's all said and done, and that's okay, too.   That's how you take your government back.   You literally take it back.

In another video, SoRelle stated, "Just so you can see, they had barricades up – keeping us away from the building was the goal. . . . Over the top, they've occupied both sides now, oh no, think we can hang 'til the 20th or what?"

On the evening of January 6, 2021, "Rhodes . . . came to believe that law enforcement was searching for Rhodes and others after their attack on the Capitol."   Cooperator Joshua James Statement of Offense, ECF No. 60 at 10.   "Rhodes divvied up various firearms and other gear among James and others who occupied a total of three cars.   Rhodes left his mobile phone with one person and departed with another person in that person's car so that law enforcement could not locate and arrest him.   The three cars departed in separate directions."   *Id*. at 10-11.   The person Rhodes left his phone with was Kellye SoRelle.   On January 8, 2021, "James met with Rhodes and others at a restaurant in Alabama."   After James showed Rhodes a video of his assault on law enforcement officers, Rhodes "told James to alter his physical appearance to conceal his identity."   SoRelle was at the restaurant with Rhodes and James.

6

On January 8, 2021, SoRelle messaged the "Leadership Intel Sharing Secured" Signal group chat: "MESSAGE FROM STEWART: My cell is down.   Will be back up soon.   Can't be avoided for now."   Gov. Exh. 54.S.125.2860.   SoRelle later added: "FROM STEWART PART II: Do NOT chatter about any OK members doing anything at capital.   Stop the chatter.   I told you before that anything you say can and will be used against you.   Apparently that wasn't worded strongly enough for some to get the message.   So let me say it like this: CLAM UP.   DO NOT SAY A DAMN THING. . . . Let me put it in infantry speak: SHUT THE FUCK UP!"   Gov. Exh. 54.S.125.2869 - 2874.   SoRelle concluded:

> STEWART: YOU ALL NEED TO DELETE ANY OF YOUR COMMENTS REGARDING WHO DID WHAT.   You are under zero obligation to leave them up.   You/we have not yet gotten a preservation order instructing us to retain those chat comments.   So DELETE THEM. . . . DELETE your self-incriminating comments or those that can incriminate others.   Start now.   Each of you Go back to before the event and scroll forward and hunt down any comment you made that can be used against you, other Oath Keepers, or the org and delete them.   And especially AARs [after action reports] and war stories.   Kill em.   Do it now.

Gov Exh. 54.S.125.2878 - 2879.   SoRelle then messaged, "Go back and delete individual posts. Got it?"   Gov. Exh. 54.S.125.2914.   Other individuals in the chat immediately began setting messages to "disappear" and discussing how to delete messages on their phones and others' phones.

The same day (January 8, 2021), SoRelle messaged the "Leadership Intel Sharing Secured" Signal group chat: "As counsel for OathKeepers and as a potential attorney for you… please call me do not openly discuss legal concerns in the group.   Everyone save my cell number. . . . please distribute my cell to your peeps."   Gov. Exh. 54.S.125.2991.   SoRelle later added, "Stewart is not currently licensed as an attorney and is asking that all potential legal exposure issued be directed to me.   You have attorney client privilege with me.   Do not communicate with anyone

regarding exposure except me.   Anything you communicate with others can be used against you."

Gov. Exh. 54.S.125.3004.   These January 8, 2021 messages are the first instance the government

has discovered in which SoRelle held herself out as an attorney for the Oath Keepers organization

or any individuals associated with the Oath Keepers.   Later, on January 22, 2021, SoRelle

messaged the same group chat: "I am now considering this chain attorney client privilege regarding

organizational business."   Gov. Exh. 54.S.125.4582.

Indeed, prior to January 6, 2021, there appears to be no evidence that SoRelle publicly

claimed she was the Oath Keepers general counsel.   As noted above, in November 2020, SoRelle

described herself on her Twitter account as, "mom, attorney, student of life, patriot."[5]   As of April

10, 2021, however, SoRelle described herself on Twitter as, "mom, attorney, student of life,

patriot, Attorney for Latinos for Trump, Blacks for Trump and *General Counsel for Oath*

*Keepers*."[6]   And SoRelle's profile on the Texas State Bar webpage states that she specializes in

"Family, Immigration, [and] Juvenile" law from her position at the "Law Office of Kellye

SoRelle."[7]   There is no indication, either before or after January 6, 2021, that SoRelle ever

identified herself with the Texas State Bar as being professionally affiliated with the Oath Keepers.

Rhodes' messages reveal the same timeline.   The prosecution team has not been able to

find any messages in which Rhodes refers to SoRelle as the general counsel for the Oath Keepers

until after January 6, 2021.   On January 22, 2021, Rhodes messaged the "Leadership Intel Sharing

Secured" Signal group chat: "All, if anyone has personal questions or issues, DM me directly or if

---

[5] *See* https://archive.ph/8PtFD.

[6] *See* https://web.archive.org/web/20210410215546/https://twitter.com/kellyesorelle (emphasis added).

[7] *See* https://www.texasbar.com/AM/Template.cfm?Section=Find_A_Lawyer&template=/Customsource/MemberDirectory/MemberDirectoryDetail.cfm&ContactID=290298.

you need to speak with Kellye, as our attorney, DM her directly.  Do NOT ramble on about anything related to Jan 6 here."  Gov. Exh. 54.S.125.4591.  In fact, on January 23, 2021, in describing the Oath Keepers' activities during the relevant time period, Rhodes described providing security for SoRelle, whom he described as "whistleblower lawyer Kellye SoRelle." Gov. Exh. 54.S.125.4646.

Beginning on March 10, 2021, Rhodes began to repeatedly refer to SoRelle as "general counsel."  *See* March 10, 2021 message ("Our general counsel, Kelley SoRelle, has court this morning so it will have to be this afternoon."); March 15, 2021 email ("God bless, Stewart Rhodes. PS – on this is also Kellye SoRelle, our General Counsel"); March 18, 2021 message ("I don't want direct contact up front.  Let's go through our Oath Keepers general counsel.  Kellye SoRelle.  Message her here on Signal and she will take it from there."); March 23, 2021 message ("When I was on with Alex last week, he said he wanted me and Oath Keepers general counsel Kellye SoRelle to come on together to discuss the legal cases of all the Jan 6 political prisoners"); April 5, 2021 message ("I'll ask attorney Kellye SoRelle to come on with me, as our General Counsel."); April 9, 2021 ("Kellye will do that as our General Counsel.  Lawyer to lawyer."); April 23, 2021 message ("meet Kellye SoRelle, general counsel for Oath Keepers.  She was on with me in an interview with Alex a couple weeks ago.").

### III.    Argument

The December 2020 messages at issue between Rhodes and SoRelle are not subject to any attorney-client privilege.  The defendant owns the burden of making a proper showing to assert an advice-of-counsel defense.  *DeFries*, 129 F. 3d at 1308.  Despite the Court's September 15, 2022 admonition to the defendants to decide prior to trial whether they will rely on advice-of-counsel defense, the defendants have not, and cannot, make the requisite showing for three reasons.

*First*, the defendants have not shown that an attorney-client relationship existed between Rhodes (or any defendant) and SoRelle, or the Oath Keepers organization and SoRelle, before January 6, 2021. "An attorney-client relationship is formed when a client and an attorney explicitly or by their conduct, manifest an intention to create the attorney/client relationship." *Headfirst Baseball LLC v. Elwood*, 999 F. Supp. 2d 199, 209 (D.D.C. 2013) (citing *In re Ryan*, 670 A.2d 375, 379 (D.C.1996)). When there is no evidence of an explicit relationship, such as a written agreement or the payment of fees, the burden falls to the party asserting the benefit of the relationship to prove its existence. *Id.*; *see also FTC v. Boehringer Ingelheim Pharm., Inc.*, 892 F.3d 1264, 1267 (D.C. Cir. 2018); Restatement (Third) of the Law Governing Lawyers § 14 ("A relationship of client and lawyer arises when a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person; and either (a) the lawyer manifests to the person consent to do so; or (b) the lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services.").

"In determining whether an attorney-client relationship exists, courts have considered factors such as (1) the character or nature of the information allegedly shared with the attorney; (2) the passage of time between the alleged former representation and the current litigation; (3) the payment of fees; and (4) the existence of a formal agreement." *Headfirst Baseball LLC*, 999 F. Supp. 2d at 209 (citing *Teltschik v. Williams & Jensen, PLLC*, 683 F. Supp. 2d 33, 45 (D.D.C. 2010) (listing the following factors for consideration: "whether the client perceived that an attorney-client relationship existed, whether the client sought professional advice or assistance from the attorney, whether the attorney took action on behalf of the client, and whether the attorney represented the client in proceedings or otherwise held herself out as the client's attorney")).

Ultimately, whether an attorney-client relationship has been formed is a question of fact. *Williams v. Mordkofsky*, 901 F.2d 158, 164 (D.C. Cir. 1990).

Additionally, when an attorney represents a corporate entity, the attorney's representation of the entity is distinct from the personal representation of everyone associated with the corporate entity.  "A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents"—its "[o]fficers, directors, employees, and shareholders." D.C. Rules of Professional Conduct, Rule 1.13, 1.13(a), Comment 1.  Similarly, D.C. Rule 4.2(c), which pertains to communications between an attorney and represented parties, specifies that for purposes of Rule 4.2, "the term 'party' or 'person' includes any person or organization, including an employee of an organization, who has the authority to bind an organization as to the representation to which the communication relates."  Thus, the D.C. rules relevant to corporate representation reflect the principle that corporate counsel's representation of an entity does not extend to personal representation of everyone associated with that entity.  The "default assumption is that the attorney only represents the corporate entity."  *In re Grand Jury Investigation*, Case No. 19-15 (BAH), 2019 WL 2179116, at * 15 (D.D.C. Mar. 4, 2019).

The defendants have not shown that SoRelle represented Rhodes or any other defendant before January 6, 2021.  Based on the evidence currently in the prosecution team's possession, SoRelle did not take any legal action on their behalf, did not represent the defendants in any legal proceedings, did not enter any formal agreement with them, and did not receive payment from them for any legal services.  None of the defendants' statements or conduct "manifest" any intention to enter a legal relationship with SoRelle before January 6, 2021.  Nor have the defendants presented any evidence that the Oath Keepers organization and SoRelle entered into a

legal agreement before January 6, 2021; in any event, the defendants have not presented any evidence that such an arrangement would have extended to them in their individual capacities.

*Second*, even if such a legal relationship existed between Rhodes (or any of the defendants) and SoRelle, the communications at issue do not constitute communications made to obtain attorney-client protected advice.   Because it is adverse to discovery and the adversary process, "the 'attorney-client privilege must be strictly confined within the narrowest possible limits consistent with the logic of its principles.'"   *Boehringer Ingelheim Pharm., Inc.*, 892 F.3d at 1269 (Pillard, J., concurring) (quoting *In re Lindsey*, 158 F.3d 1263, 1272 (D.C. Cir. 1998)).   Messages between an attorney and her client are privileged "if the communication was made for the purpose of obtaining or providing legal advice."   *Id*. at 1267.   The D.C. Circuit has laid out the conditions under which the attorney-client privilege attaches:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984) (citations omitted).   Ultimately, attorney-client communications are privileged if "they rest on confidential information obtained from the client." *Id*. at 99.

The messages at issue fall far below the threshold of confidential, privileged communications between an attorney and client.   The government is aware that the December 10, 2020 messages were between Rhodes and SoRelle and at least three other individuals, thereby piercing the privilege.   *See In re Sealed Case,* 737 F.2d at 99 ("the communication relates to a

fact of which the attorney was informed by his client *without the presence of strangers*") (emphasis added).   Likewise, the December 29, 2020 messages at issue between Rhodes and SoRelle do not constitute a fact from Rhodes to SoRelle communicated for the purpose of securing an opinion on law or legal services.   Rhodes voicing that Congress does not "give a shit how many show up and wave a sign, pray, or yell" and that "[t]hey won't fear us till we come with rifles in hand," is, quite simply, an inculpatory statement of his criminal intent and reason for going to Washington, D.C., on January 6, 2021.

    *Finally*, and relatedly, SoRelle is a co-conspirator in the charged conspiracy to obstruct an official proceeding, and communications to and from her are exempted from the attorney-client privilege by the crime-fraud exception.   Communications between an attorney and her client are "not protected if the communications are made in furtherance of a crime, fraud, or other misconduct."   *In re Sealed Case*, 754 F.2d 395, 399 (D.C. Cir. 1985); *see also Clark v. United States*, 289 U.S. 1, 14 (1933); *West*, 392 F.3d at 45-57.   Once the privilege is established, the burden of overcoming the privilege falls on the party seeking to invoke the exception.   *In re Sealed Case*, 107 F.3d 46, 50 (D.C. Cir. 1997).   To overcome the privilege, the government must meet two conditions: "First, the client must have made or received the otherwise privileged communications with the intent to further an unlawful or fraudulent act.   Second, the client must have carried out the crime or fraud."   *Id*. at 49 (internal citations omitted).   To satisfy its burden of proof, the government must "offer[] evidence that if believed by the trier of fact would establish the elements of an ongoing or imminent crime or fraud."   *Id*. at 50 (quoting *In re Sealed Case*, 754 F.2d at 399).

    SoRelle played an active role in the conspiracy to obstruct the official proceeding on January 6, 2021.   She was the only other signatory on the December 14 and December 23, 2020,

13

open letters to then-President Trump urging him to invoke the Insurrection Act and warning that

Rhodes, SoRelle, and other conspirators would act regardless.   She later breached the restricted

Capitol grounds with Rhodes and, while doing so, laid out exactly what her and others' intent was

in a video: "They broke the barrier, they got up there, they may end up inside before it's all said

and done, and that's okay, too.   That's how you take your government back.   You literally take

it back."   She later added: "Just so you can see, they had barricades up – keeping us away from

the building was the goal. . . . Over the top, they've occupied both sides now, oh no, think we can

hang 'til the 20th or what?"   Rhodes' communications to and from SoRelle were made not to

solicit or provide legal advice; they were made to further the conspiracy.

## IV.    Conclusion

For the foregoing reasons, Rhodes' December 2020 communications with SoRelle are not

subject to the attorney-client privilege.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052


By:       _____
          Troy A. Edwards, Jr.
          Assistant United States Attorney
          N.Y. Bar No. 5453741
          Ahmed M. Baset
          Louis Manzo
          Jeffrey S. Nestler
          Kathryn Rakoczy
          Assistant United States Attorneys
          U.S. Attorney's Office, District of Columbia
          601 D Street NW
          Washington, D.C. 20530

14

_____/s/_____
Alexandra Hughes
Justin Sher
Trial Attorneys
National Security Division,
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20004