"Let this be filed"
by Judge Amit P. Mehta
on 12/22/2022



Get Outlook for iOS

From: Rakoczy, Kathryn (USADC) <Kathryn.Rakoczy@usdoj.gov>
Sent: Wednesday, November 2, 2022 1:17 AM
To: Jean Claude Douyon <Jean-Claude_Douyon@dcd.uscourts.gov>; David Alpert <David_Alpert@dcd.uscourts.gov>;
angiehalim@gmail.com <angiehalim@gmail.com>; Brad Geyer <bradford.geyer@formerfedsgroup.com>; Connor Martin
<connor@bsrlegal.com>; David Fischer <fischerandputzi@hotmail.com>; edwardtarpley_att.net
<edwardtarpley@att.net>; james bright <jlbrightlaw@gmail.com>; jcrisp_crisplegal.com <jcrisp@crisplegal.com>; Juli
Haller <hallerjulia@outlook.com>; Matthew J. Peed <matt@clintonpeed.com>; phillip_thelinderfirm.com
<phillip@thelinderfirm.com>; Phillip Linder 2 <attorneylinder@gmail.com>; Scott Weinberg <Scott@bsrlegal.com>;
Stanley Woodward <stanley@brandwoodwardlaw.com>; 808shipleylaw_gmail.com <808shipleylaw@gmail.com>
Cc: Nestler, Jeffrey (USADC) <Jeffrey.Nestler@usdoj.gov>; Edwards, Troy (USADC) <Troy.Edwards@usdoj.gov>; Manzo,
Louis (CRM) <Louis.Manzo@usdoj.gov>; Hughes, Alexandra (NSD) <Alexandra.Hughes@usdoj.gov>; Manzo, Louis
(USASPC) <Louis.Manzo2@usdoj.gov>; Hughes, Alexandra (USASPC) <Alexandra.Hughes2@usdoj.gov>
Subject: Housekeeping matters at the close of the government case

CAUTION - EXTERNAL:

Good evening,

In double-checking our exhibit list, we realized a few housekeeping issues that we will seek to clear up on the record
tomorrow before we rest, probably before Special Agent Moore's testimony.

- Exhibits 1007.1 through 1007.4 are clips that were shown but were not moved in (the whole interview, 1007, was
  admitted, but we'd like to make sure the clips are in, independently, too);

- 1056.7029.314 – we inadvertently read the exhibit into the record as Exhibit 1056.7029.214, so we will seek to
  correct the exhibit name on the record;

- 1056.7029.258 – Similarly, we inadvertently read the exhibit into the record as Exhibit 1056.7209.258, so we will
  seek to correct the exhibit name on the record;

1092.1 – Our records reflect that this was admitted, but the transcript did not capture its admission, so we will make sure the record is clear on this;

1097.1 – This exhibit was published to the jury but we are not sure it was technically admitted, so we will do that on the record;

1099.1 – We meant to move this in with the large group of exhibits we moved in at the start of former Special Agent Whitney Drew's testimony, but we may have overlooked this number. This is admissible pursuant to a stipulation (Stipulation #3010).

1103.1 and 1103.2 – We published these to the jury Tuesday, noting that they were already admitted; we thought they had been admitted during former Special Agent Whitney Drew's testimony, but the record suggests they were not; we believe Special Agent Harris laid a foundation for the photos on Tuesday and will seek their admission;

1532 (the calendar) – possibly was only marked for identification as a demonstrative but we will seek its admission in its current state, along with all the markings made during trial;

2002 – We inadvertently moved into evidence Donovan Crowl's entire Facebook return – we only meant to move in those excerpts we used at trial, namely:
- o   2002.T.79A-79.B (part of Exhibit 6623);
- o   2002.T.61; and
- o   2002.T.83E (part of Exhibit 6734);

3000 series of exhibits – stipulations – Exhibit 3000 was moved into evidence, but then modified and broken into parts, and only one or two other stipulations were formally admitted.  We will seek to move them all in, namely
- o   3000.A – 3000.H;
- o   3001;
- o   3003-3017;
- o   3019-3022; and
- o   3024-3026.

4807.1-4807.3 – We believe this was admitted, but the transcript does not reflect that. We will formally move in again, so that the record is clear;

Exhibits 6610 and 6624 were admitted subject to redaction; we have attached redacted copies here;

6623 – compilation of exhibits shown during Palian redirect – they were referenced and moved in by message number – we seek to move in the exhibits all together – the exhibit is attached;

6923 – We moved in an exhibit of messages shown through Special Agent Sylvia Hilgeman as Exhibit 6923, but the record called it 6903; we would like to correct the record;

Exhibits with transcripts – We have provided the defense with a courtesy copy of all our exhibits that contain transcripts in one batch and have not heard any objections to the accuracy of the transcripts, so we will seek the admission of these versions of the exhibits with transcripts, namely:
- o   1000.1.Tr – 1000.11.Tr (GoToMeeting);
- o   1052.1.Tr – 1052.9.Tr (Vallejo/Kandaris Podcast 1/6/21);
- o   1202.2.Tr – 1202.5.Tr (Alpers recording - to be admitted Wednesday);
- o   1500, 1502-1506 (montages that contain transcripts); and
- o   6745Tr, 6746Tr, 6747Tr (SoRelle Facebook Video Transcripts).

Thank you,
Kate

**Kathryn L. Rakoczy**
Assistant United States Attorney
United States Attorney's Office
601 D Street, N.W., Room 5-236
Washington, D.C. 20001
(202) 252-6928 (office phone)
(202) 740-3245 (cell phone)
Kathryn.Rakoczy@usdoj.gov

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.



From: Nestler, Jeffrey (USADC) <Jeffrey.Nestler@usdoj.gov>
Sent: Thursday, November 3, 2022 9:10 PM
To: David Alpert <David_Alpert@dcd.uscourts.gov>; Jean Claude Douyon <Jean-Claude_Douyon@dcd.uscourts.gov>
Cc: Brad Geyer <bradford.geyer@formerfedsgroup.com>; David Fischer <fischerandputzi@hotmail.com>;
edwardtarpley_att.net <edwardtarpley@att.net>; james bright <jlbrightlaw@gmail.com>; jcrisp_crisplegal.com
<jcrisp@crisplegal.com>; Juli Haller <hallerjulia@outlook.com>; phillip_thelinderfirm.com <phillip@thelinderfirm.com>;
Phillip Linder 2 <attorneylinder@gmail.com>; Stanley Woodward <stanley@brandwoodwardlaw.com>; Rakoczy, Kathryn
(USADC) <Kathryn.Rakoczy@usdoj.gov>; Edwards, Troy (USADC) <Troy.Edwards@usdoj.gov>; Manzo, Louis (CRM)
<Louis.Manzo@usdoj.gov>; Hughes, Alexandra (NSD) <Alexandra.Hughes@usdoj.gov>
Subject: RE: Caselaw on defense cross-examination of other defense witnesses

**CAUTION - EXTERNAL:**

Dear chambers,

In advance of our legal discussion tomorrow morning, we write with two points.

First, with respect to the Court's question a couple of days ago about how to instruct the jury with regard to trial
transcripts, we think the issue is moot. That instruction is a preliminary one; it comes from Redbook 1.102. The Court
already delivered the instruction prior to opening statements. *See* 10/3/22 Tr. 1082 ("Finally, we have two terrific court
reporters here, one in the morning and one in the afternoon, taking down testimony. But you will not have a transcript
with you during deliberations. You must rely on your memory and, if you take them, your notes as an aid to that
memory. So I ask you to pay close attention, and we will begin with the opening statement by the government."). We
respectfully suggest that the Court not address the possibility of transcripts in its closing instructions. The jury will
therefore likely not think to ask to review a transcript. If the jury does send a note asking to review a transcript, we can
address the issue at that point.

Second, with respect to Mr. Fischer's request that FBI agents not be allowed to be present in the courtroom during the
defense's case, we disagree. Federal Rule of Evidence 615(b) specifically allows a case agent who may testify to remain
in the courtroom throughout the trial. This exception to the general rule against a witness being present at trial applies
to investigative agents, such as federal agents and police detectives. See Fed. R. Evid. 615 Advisory Committee note to
1974 Enactment ("Many district courts permit government counsel to have an investigative agent at counsel table . . .
although the agent is or may be a witness. The practice is permitted as an exception to the rule of exclusion and

1

compares with the situation defense counsel finds himself in—he always has the client with him to consult during trial"). In *United States v. Sullivan*, the D.C. Circuit recognized that "under the second exception to Rule 615," the government is permitted "to designate a law enforcement officer to remain in the courtroom as the government's representative." 56 F.3d 1532, 1995 WL 364662, at *2 (D.C. Cir. 1995) (unpublished); *see also United States v. Wilkins*, 538 F. Supp. 3d 49, 68 (D.D.C. 2021) (granting government motion to allow the testifying case agent to remain at counsel table throughout trial because it was "consistent with the governing Rules of Evidence"); *United States v. Gonzalez*, 20-CR-40 (BAH), 2020 WL 6158246, at *6 (D.D.C. Oct. 21, 2020) ("Federal Rule of Evidence 615(b) plainly allows the government to exempt from sequestration an investigative agent who may also be called as a witness").

Prior to trial, we made clear that, given the nature of the case, the number of defendants and subjects, and the number of case agents who handled different aspects of the investigation throughout the country, during the trial we would have multiple FBI agents in the courtroom acting as "case agents" pursuant to Rule 615(b). The Rule allows, in the Court's discretion, the designation of more than one "case agent" to remain in the courtroom. *See, e.g., United States v. Edwards*, 34 F.4th 570, 585 (7th Cir. 2022); *United States v. Alvarado*, 647 F.2d 537, 540 (5th Cir. 1981).

We are not aware of any authority or rationale for requiring the sequestration of an FBI case agent during the defense's case-in-chief. Rule 615 plainly allows the government to call as a witness a case agent who was present in the courtroom during other witnesses' testimony. *Gonzalez*, 2020 WL 6158246, at *6. There is nothing unique about the defense's case-in-chief or a defense witness. To the contrary, the rationale for allowing a government representative to be present in the courtroom – that a particular case agent may be most familiar with a particular witness, topic, or geographic area – is only heightened during the defense case.

And if the government elects to call an FBI case agent in its rebuttal case to complete an impeachment, the agent's prior presence in the courtroom should have no effect on her testimony. To complete an impeachment, the government will simply ask the agent if she conducted an interview of the witness on a certain date and whether the witness made a certain statement. There is no need for the agent to discuss or even be aware of the witness's trial testimony. And we discern no benefit to the agent's testimony from previously viewing the witness's trial testimony. The parties have the agents' 302s; an agent completing an impeachment based on a witness statement as memorialized in her 302 is not affected by watching the witness testify. In other words, limited testimony to complete an impeachment does not even appear to be implicated by the policy underlying the rule on witnesses.

Thank you.

From: Nestler, Jeffrey (USADC) <JNestler1@usa.doj.gov>
Sent: Thursday, November 3, 2022 10:16 AM
To: David Alpert <David_Alpert@dcd.uscourts.gov>; Jean Claude Douyon <Jean-Claude_Douyon@dcd.uscourts.gov>
Cc: Brad Geyer <bradford.geyer@formerfedsgroup.com>; David Fischer <fischerandputzi@hotmail.com>; edwardtarpley_att.net <edwardtarpley@att.net>; james bright <jlbrightlaw@gmail.com>; jcrisp_crisplegal.com <jcrisp@crisplegal.com>; Juli Haller <hallerjulia@outlook.com>; phillip_thelinderfirm.com <phillip@thelinderfirm.com>; Phillip Linder 2 <attorneylinder@gmail.com>; Stanley Woodward <stanley@brandwoodwardlaw.com>; Rakoczy, Kathryn (USADC) <KRakoczy2@usa.doj.gov>; Edwards, Troy (USADC) <TEdwards1@usa.doj.gov>; Manzo, Louis (CRM) <Louis.Manzo@usdoj.gov>; Hughes, Alexandra (NSD) <Alexandra.Hughes@usdoj.gov>
Subject: Caselaw on defense cross-examination of other defense witnesses

Dear chambers,

The caselaw below suggests that Defendant *A* has a right to cross-examine a witness sponsored by Defendant *B* (including Defendant *B* himself) *only if* the witness's testimony inculpates Defendant *A*.

In each case below, the appellate court held that the trial court properly precluded a defendant from cross-examining a witness sponsored by the testifying co-defendant (often the testifying co-defendant himself), because the witness's testimony was not inculpatory as to the defendant. The sub-bullets below are just quotes from the cases themselves.

- United States v. Mercks, 304 F.2d 771, 772 (4th Cir. 1962)
  - Undoubtedly, if a party in a joint indictment testifies in his own behalf and incriminates his co-defendant, the latter should be extended the right of cross-examination.
- United States v. Crockett, 813 F.2d 1310, 1314 (4th Cir. 1987)
  - In fact, the trial judge found that the testimony of Crockett and Crews about each other would, if believed, be exculpatory.
  - Under Mercks, therefore, Crews was not entitled to cross-examine Crockett. Our holding in Mercks is consistent with the purpose of the Confrontation Clause. The Confrontation Clause provides the defendant with a right "to be confronted with the witnesses against him." The right of confrontation does not give defendants a plenary right to elicit friendly testimony. That is the purpose of the Sixth Amendment right of a defendant "to have compulsory process for obtaining witnesses in his favor."
  - Neither does the right to confrontation arise merely from the status of the witness as a codefendant. Granting a defendant an unrestricted right to cross-examine a non-hostile codefendant could have adverse effects. First, counsel would possess an unrestricted right to ask leading questions. See Fed.R.Evid. 611(c). Second, favorable testimony from a cooperative codefendant may possess false credibility in the eyes of the jury if obtained on cross-examination. A witness called by defendant is understood to be the defendant's own; cross-examination, on the other hand, might, as the district court noted, enable counsel to smuggle "self-serving statements" into trial under the cloak of hostility.
  - The cases of this circuit and of the Supreme Court have thus understandably justified the right of confrontation on the basis of defendant's right to impeach and otherwise challenge adverse testimony. Trial courts need not assess the adverse nature of testimony according to formalistic categories—by whether a co-conspirator was called by the government, or is testifying on his own behalf or on behalf of a codefendant. The critical matter is not the formal status of a witness but the actual content of his testimony. See Fed.R.Evid. 607. Nonetheless, the right to confrontation is most often a right to confront opposing witnesses:
    - The constitutional right of confrontation guaranteed to a state criminal defendant by the fourteenth amendment has as one of its most important aspects the right to cross-examine a hostile witness in order to undermine the credibility of the witness by highlighting the possible influence of bias on the testimony of the witness.
  - Hoover v. State of Maryland, 714 F.2d 301, 305 (4th Cir.1983); see also Chavis v. State of North Carolina, 637 F.2d 213, 225 (4th Cir.1980). Given the text of the Sixth Amendment and its animating purposes, it is not surprising that the Eleventh Circuit has recently adopted a rule similar to that of Mercks, and held that "the Sixth Amendment guarantees only the opportunity to confront adverse witnesses." United States v. Andrews, 765 F.2d 1491, 1501 (11th Cir.1985) (emphasis in original).
- United States v. Andrews, 765 F.2d 1491, 1501 (11th Cir. 1985)
  - Appellant correctly asserts that the right to cross-examination is comprehended in the Sixth Amendment right to confrontation. Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). This right is not, however, absolute or incapable of restriction. Its curtailment is within the discretion of the trial court, Greene v. Wainwright, 634 F.2d 272 (5th Cir.1981), and it is subject to the requirements of relevance and probative value. Id.; Cloud v. Thomas, 627 F.2d 742 (5th Cir.1980). Moreover, the Sixth Amendment guarantees only the opportunity to confront adverse witnesses, United States v. Bujese, 434 F.2d 46 (2d Cir.1970); it does not guarantee the right to confront witnesses who testify not against but rather in favor of the party asserting the right. Cf. United States v. Bujese, supra, 434 F.2d at 48 (no right to cross-examine co-defendant who confessed on stand and testified for appellant). In that portion of the trial addressed by this claim, Andrews does not appear to have been a witness adverse to either Royster or the other co-defendants.
- United States v. Arias-Santana, 964 F.2d 1262, 1267 (1st Cir. 1992)
  - Appellant contends that he was deprived of his Sixth Amendment right to confront the witnesses against him when the district court refused to allow him to cross-examine the landlord of the apartment. After the landlord was called and examined on direct by codefendant Diaz, appellant attempted to elicit the

identity and whereabouts of the maintenance man who was hired by the landlord and was in the apartment at the time appellant was arrested on March 15, 1991.

- o The Sixth Amendment right of confrontation includes "an adequate opportunity to cross-examine adverse witnesses." United States v. Berrio–Londono, 946 F.2d 158, 160 (1st Cir.1991) (quoting United States v. Owens, 484 U.S. 554, 557, 108 S.Ct. 838, 841, 98 L.Ed.2d 951 (1988)) (emphasis added); see also United States v. Campbell, 935 F.2d 39, 43 (4th Cir.), cert. denied, 502 U.S. 929, 112 S.Ct. 348, 116 L.Ed.2d 287 (1991) (statement is inculpatory, and triggers Sixth Amendment right of confrontation, only if "fairly understood to incriminate the accused.") (emphasis added); United States v. Crockett, 813 F.2d 1310, 1314 (4th Cir.), cert. denied, 484 U.S. 834, 108 S.Ct. 112, 98 L.Ed.2d 71 (1987) ("animating purposes" of Sixth Amendment suggest that "adversity" of witness be evaluated in light of actual content of testimony, rather than by "formalistic categories" as to which party called witness); cf. United States v. Porter, 764 F.2d 1, 16 (1st Cir.1985) (right of confrontation not actuated unless codefendant's extrajudicial statement suggests defendant's participation in offense). "The purpose of protecting the right to cross-examine is to afford the defendant an opportunity to impeach the credibility of a witness and to explore the witness' motives and biases." Berrio–Londono, 946 F.2d at 160.
- o The landlord testified that neither the appellant nor Diaz was a tenant, thereby intimating that they may have been innocent visitors to the apartment at the time of the raid. The landlord testified that the maintenance man was hired to repair the plumbing in the apartment, thus advancing a plausible explanation to counteract the officers' testimony that the running water in the bathroom may have been related to an attempt to destroy contraband as the search party was forcing its way through the front door. See supra note 2. Finally, the landlord contradicted the officers' testimony that the front door had been reinforced to hinder forcible entry.
- o Appellant's attempt to elicit information from the landlord was not aimed at impeaching the landlord or any government witness. Rather, appellant sought information that might have led to the discovery of evidence (favorable or unfavorable) plainly available to appellant prior to trial. Appellant was not entitled to postpone pretrial discovery until trial under the guise of a claimed right to confront a witness whose testimony was not adverse to appellant.

- United States v. Kindig, 854 F.2d 703, 708–09 (5th Cir. 1988)
  - o Kindig's second allegation of error is that Judge Polozola infringed Kindig's sixth amendment right of confrontation by prohibiting his cross-examination of his co-defendant Tullos. It appears that Judge Polozola, at the time the two defendants were required to inform the Court whether they intended to put on a joint defense or separate defenses, ruled, before hearing any defense testimony, that neither defendant could "participate in the questioning of each other's witnesses" if they presented separate defenses, Transcript Vol. VI at 247–48; but each defendant would still be free to call his co-defendant on direct, if the co-defendant had taken the stand in his own defense. Id. Kindig did not call Tullos.
  - o Kindig notes that restricting the cross-examination of a co-defendant who gives inculpatory testimony violates a defendant's right to confront adverse witnesses. See United States v. Crockett, 813 F.2d 1310, 1313 (4th Cir.1987). Kindig complains that although Tullos' direct testimony was generally exculpatory for both defendants, yet Tullos gave some testimony that Kindig assisted him with respect to some elements of 18 U.S.C. § 1006. Kindig does not specify which elements, and his references to Tullos' transcript do not support this assertion, as discussed more fully below. Kindig finds especial fault with allegedly incriminating facts or unfavorable inferences that could be drawn from neutral facts elicited by the prosecution upon cross-examination of Tullos, including (1) how Kindig became involved in the deal and the interest rate charged to him; (2) the profit to be made by Kindig; (3) the reasons for the structure of Kindig's loan from Sun Belt and his loan to Kent; and (4) Kindig's knowledge vel non that he had got a second mortgage, rather than a first, on Kent's property. According to Kindig, the prosecution incriminated him by use of its cross-examination of Tullos.
  - o We reject this allegation of error. The sixth amendment "guarantees only the opportunity to confront adverse witnesses ...; it does not guarantee the right to confront witnesses who testify not against but rather in favor of the party asserting the right." United States v. Andrews, 765 F.2d 1491, 1501 (11th Cir.1985) (citations omitted) (original emphasis)

- Trial courts need not assess the adverse nature of testimony according to formalistic categories—by whether a co-conspirator was called by the Government, or is testifying on his own behalf or on behalf of a co-defendant. The critical matter is not the formal status of a witness but the actual content of his testimony. United States v. Crockett, 813 F.2d at 1314.
- Indeed, in Andrews, the trial court ruled "that the question of whether counsel for co-defendants could cross-examine [defendant] Andrews would be resolved following his direct testimony, according to the circumstances that developed." United States v. Andrews, 765 F.2d at 1500. We view this practice as far preferable to the "formalistic categories" which Judge Polozola seems to have applied herein.
- Nevertheless, as none of Tullos' testimony was actually adverse to Kindig, we conclude that no right of confrontation ever arose.

Jeffrey S. Nestler
Assistant United States Attorney
601 D Street NW, Washington, DC 20530
Room 5-1501
Email: Jeffrey.Nestler@usdoj.gov
Office: 202-252-7277
Cell: 202-815-8672

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.



**From:** Manzo, Louis (USASPC) <Louis.Manzo2@usdoj.gov>
**Sent:** Thursday, November 10, 2022 10:27 AM
**To:** Brad Geyer <bradford.geyer@formerfedsgroup.com>; Jean Claude Douyon <Jean-Claude_Douyon@dcd.uscourts.gov>; David Alpert <David_Alpert@dcd.uscourts.gov>
**Cc:** Attorneylinder <attorneylinder@gmail.com>; 808shipleylaw_gmail.com <808shipleylaw@gmail.com>; Matt <matt@clintonpeed.com>; Juli Haller <HallerJulia@outlook.com>; Rakoczy, Kathryn (USADC) <Kathryn.Rakoczy@usdoj.gov>; David Alpert <David_Alpert@dcd.uscourts.gov>; Angiehalim <angiehalim@gmail.com>; Connor <connor@bsrlegal.com>; Fischerandputzi <fischerandputzi@hotmail.com>; edwardtarpley_att.net <edwardtarpley@att.net>; Jlbrightlaw <jlbrightlaw@gmail.com>; jcrisp_crisplegal.com <jcrisp@crisplegal.com>; phillip_thelinderfirm.com <phillip@thelinderfirm.com>; Scott Weinberg <Scott@bsrlegal.com>; Stanley <stanley@brandwoodwardlaw.com>; Nestler, Jeffrey (USADC) <Jeffrey.Nestler@usdoj.gov>; Manzo, Louis (CRM) <Louis.Manzo@usdoj.gov>; Hughes, Alexandra (NSD) <Alexandra.Hughes@usdoj.gov>
**Subject:** RE: Tax Questions on Cross

**CAUTION - EXTERNAL:**

Court and Counsel,

We would like to revisit the tax question today. The government seeks to introduce the attached document in its rebuttal case for the reasons below.

Defendant Stewart Rhodes has presented to the jury, through opening statement and direct examination, a narrative that Stewart Rhodes always follow the law. For example, Rhodes has stated that he is a constitutional expert (Nov. 4, 2022, Tr. at 64), that he and the individuals under his command work hand in hand with law enforcement (Nov. 7, 2022, Tr. at 105), that the Oath Keepers are composed of 30% law enforcement officers (Nov. 4, 2022, Tr. at 85), and that the heavily armed Quick Reaction Force stationed in Virginia would only cross into Washington, DC if President Trump invoked the Insurrection Act (Nov. 7, 2022, Tr. at 47).

The Court has noted that, "Rhodes has consistently held himself out to be somebody who tries to assiduously follow the law and follow the orders as they've been provided to him." (Nov. 7, 2022, Tr. at 120). In admitting evidence that the defendant has been disbarred, the Court found, "Look, the bottom line is, Mr. Rhodes has testified in a way that, and a theme of the defense has been that he follows the law; and that he attempts to

follow the law when it is imposed. And the government's response is, He does that when it's convenient to him and it's advantageous to him." (Nov. 7, 2022. Tr. at 120).

The government seeks to introduce limited, but additional evidence, to rebut the defense's evidence that Rhodes follows the law. Mr. Rhodes did not file federal taxes from 2008-2020, a period which the defense extensively explored on direct examination. In the government's rebuttal case, the government seeks to introduce the attached document to rebut the defense's claims of lawfulness and to impeach Rhode's credibility. Consistent with the court's ruling regarding Rhode's disbarment, the attached document shows that Rhodes only follows orders when convenient for him. Filing federal taxes, a duty that applies to every American, is inconvenient for Rhodes, who has repeatedly held himself out to be a patriotic American.

Finally, the government reserves the right to present similar information regarding Kenneth Harrelson, if Mr. Harrelson introduces evidence concerning his lawfulness and/or to impeach his credibility. Mr. Harrelson has also not filed federal taxes from 2014-2021.

Thanks,
Lou


**From:** Edwards, Troy (USADC)
**Sent:** Monday, November 7, 2022 3:22 PM
**To:** Brad Geyer <bradford.geyer@formerfedsgroup.com>; Jean Claude Douyon <Jean-Claude_Douyon@dcd.uscourts.gov>; 'David Alpert' <David_Alpert@dcd.uscourts.gov>
**Cc:** Attorneylinder <attorneylinder@gmail.com>; 808Shipleylaw <808shipleylaw@gmail.com>; Matt <matt@clintonpeed.com>; Juli Haller <HallerJulia@outlook.com>; Rakoczy, Kathryn (USADC) <KRakoczy2@usa.doj.gov>; David Alpert <David_Alpert@dcd.uscourts.gov>; Angiehalim <angiehalim@gmail.com>; Connor <connor@bsrlegal.com>; Fischerandputzi <fischerandputzi@hotmail.com>; edwardtarpley_att.net <edwardtarpley@att.net>; Jlbrightlaw <jlbrightlaw@gmail.com>; Jcrisp <jcrisp@crisplegal.com>; Phillip <phillip@thelinderfirm.com>; Scott Weinberg <Scott@bsrlegal.com>; Stanley <stanley@brandwoodwardlaw.com>; Nestler, Jeffrey (USADC) <JNestler1@usa.doj.gov>; Manzo, Louis (CRM) <Louis.Manzo@usdoj.gov>; Hughes, Alexandra (NSD) <Alexandra.Hughes@usdoj.gov>
**Subject:** Tax Questions on Cross

Chambers and counsel:

On the issue of whether cross examination regarding the failure to pay taxes is appropriate, the government submits that it is under Federal Rule of Evidence 608(b)(1). Below are two cases for the Court's review (the first involving tax offenses but discussing the cross more generally, and the second not involving tax offenses):

1. *United States v. Hatchett*, 918 F.2d 631, 641 (6th Cir. 1990)

2. *United States v. Bustamante*, 45 F.3d 933, 945–46 (5th Cir. 1995)

!

**Troy A. Edwards, Jr.**
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
(202) 258-1251


**From:** Brad Geyer <bradford.geyer@formerfedsgroup.com>
**Sent:** Monday, November 7, 2022 2:28 PM

**To:** Jean Claude Douyon <Jean-Claude_Douyon@dcd.uscourts.gov>
**Cc:** Attorneylinder <attorneylinder@gmail.com>; 808Shipleylaw <808shipleylaw@gmail.com>; Matt <matt@clintonpeed.com>; Juli Haller <HallerJulia@outlook.com>; Rakoczy, Kathryn (USADC) <KRakoczy2@usa.doj.gov>; David Alpert <David_Alpert@dcd.uscourts.gov>; Angiehalim <angiehalim@gmail.com>; Connor <connor@bsrlegal.com>; Fischerandputzi <fischerandputzi@hotmail.com>; edwardtarpley_att.net <edwardtarpley@att.net>; Jlbrightlaw <jlbrightlaw@gmail.com>; Jcrisp <jcrisp@crisplegal.com>; Phillip <phillip@thelinderfirm.com>; Scott Weinberg <Scott@bsrlegal.com>; Stanley <stanley@brandwoodwardlaw.com>; Nestler, Jeffrey (USADC) <JNestler1@usa.doj.gov>; Edwards, Troy (USADC) <TEdwards1@usa.doj.gov>; Manzo, Louis (CRM) <Louis.Manzo@usdoj.gov>; Hughes, Alexandra (NSD) <Alexandra.Hughes@usdoj.gov>
**Subject:** [EXTERNAL] RE: Logistics Question

JC:

There is a specific process in place for DOJ to obtain authenticated and certified tax records from the IRS.

https://www.justice.gov/archives/jm/criminal-resource-manual-515-requests-disclosure-tax-returns-and-return-information-irs-not

United States Attorneys may have occasion to seek access to tax information (returns and return information) for use in non-tax criminal matters. Title 26, United States Code, Section 6103(i)(1) provides for tax information to be obtained upon the grant of an ex parte order by a Federal district court judge or magistrate judge for use in criminal investigations. (26 U.S.C. § 6103(i)(5) similarly provides for disclosure of tax information exclusively for use in locating fugitives.) In addition, 26 U.S.C. § 6103(i)(2) provides for return information, other than taxpayer return information, to be obtained by a written request signed by a United States Attorney or other person so specified.

SUGGESTED PROCEDURES

1. Upon determination that tax information is needed, regardless of the address of the subject, provide the name, address, and social security number of the subject and the taxable periods for which information is sought to the Internal Revenue Service by calling the local Internal Revenue Service Disclosure Officer.

2. Prepare written request (to be used for disclosure of information obtained by third parties only) or Application for Ex Parte Court Order, along with the Authorization, Verification and Order (to be used to obtain information obtained by third parties, as well as, taxpayers and their representatives) as specified in this Manual.

3. Mail written request or a copy of the application and unsigned court order to the attention of the Disclosure Officer at the local Internal Revenue Service District Director's Office.

4. Once a certified copy of the signed court order is obtained, mail to the local Disclosure Officer referenced in No. 3 above.

5. When dealing with multiple tax returns, either concerning a single or multiple entities, file a single order as opposed to multiple orders. For example, if you are seeking returns and return information for John and Jane Doe and numerous business entities with which they are associated, a single order identifying the information sought for each entity is preferable over having an individual order for each entity. This is true even where different documents are sought for different years on each entity. You need only identify the years and documents for each entity on the single order.
6. When obtaining State tax returns, you can write or call the appropriate State Department of Revenue or Taxation.

Very Kind Regards,
Brad Geyer

**Bradford L. Geyer**FormerFedsGroup.Com

Mobile: (856) 607-5708
Email: Brad@FormerFedsGroup.com

USA:
141 I Route 130 South, Suite 303
Cinnaminson, NJ 08077 888-486-FEDS

*"Surround Yourself With FormerFeds Who Share Your
Mission (TM)"*

IMPORTANT: FormerFeds LLC (FormerFedsGroup.Com) now provides law firm services under the supervision of Bradford L. Geyer who is a member of the Pennsylvania and New Jersey Bars. The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copies thereof.

---- On Mon, 07 Nov 2022 09:10:23 -0500 Jean Claude Douyon<Jean-Claude_Douyon@dcd.uscourts.gov> wrote ----

Good morning all,

Apologies for the delayed response. The two work rooms will remain set aside for the second trial group.

Best,
JC

**From:** phillip linder <attorneylinder@gmail.com>
**Sent:** Thursday, November 3, 2022 4:31 PM
**To:** 808shipleylaw_gmail.com <808shipleylaw@gmail.com>
**Cc:** Jean Claude Douyon <Jean-Claude_Douyon@dcd.uscourts.gov>; Matthew J. Peed <matt@clintonpeed.com>; Juli Haller <HallerJulia@outlook.com>; Rakoczy, Kathryn (USADC) <Kathryn.Rakoczy@usdoj.gov>; David Alpert <David_Alpert@dcd.uscourts.gov>; angiehalim@gmail.com; Brad Geyer <bradford.geyer@formerfedsgroup.com>; Connor Martin <connor@bsrlegal.com>; David Fischer <fischerandputzi@hotmail.com>; edwardtarpley_att.net <edwardtarpley@att.net>; james bright <jlbrightlaw@gmail.com>; jcrisp_crisplegal.com <jcrisp@crisplegal.com>; phillip_thelinderfirm.com <phillip@thelinderfirm.com>; Scott Weinberg <Scott@bsrlegal.com>; Stanley Woodward <stanley@brandwoodwardlaw.com>; Nestler, Jeffrey (USADC) <Jeffrey.Nestler@usdoj.gov>; Edwards, Troy (USADC) <Troy.Edwards@usdoj.gov>; Manzo, Louis (CRM) <Louis.Manzo@usdoj.gov>; Hughes, Alexandra (NSD) <Alexandra.Hughes@usdoj.gov>
**Subject:** Re: Logistics Question

**CAUTION - EXTERNAL:**

JC,

4