UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Criminal Case No. 22-cr-15 (APM) |
| | : | |
| **KENNETH HARRELSON** | : | *Formerly* |
| | : | |
| Defendant | : | No. 21-cr-28 (APM) |
| | : | |

**REPLY ON KENNETH HARRELSON'S MOTIONS FOR NEW TRIAL, FOR RULE 29 JUDGEMENT OF ACQUITTAL AND TO DISMISS DUE TO GOVERNMENT REFUSAL TO COMPLY WITH *BRADY V. MARYLAND* REQUIRED DISCLOSURE OF EXCULPATORY INFORMATION**

Defendant, Kenneth Harrelson, through the undersigned counsel, Bradford L. Geyer, presents this REPLY to the Government's Opposition to his Motions For New Trial, For Rule 29 Judgment Of Acquittal And To Dismiss Due To Government Refusal To Comply With *Brady v. Maryland,* 373 U.S. 83 (1963) and progeny Required Disclosure Of Exculpatory Information, filed at Dkt. # 433 on December 23, 2022, stating as follows:

**I.   INTRODUCTION AND POSTURE OF THE CASE**

This present Reply addresses Defendant Kenneth Harrelson's motion at Dkt. #433. Defendant Harrelson moved the Court after the jury verdict for (a) a new trial, (b) acquittal notwithstanding the jury verdict, and (c) dismissal for the Government's willful failure to comply with *Brady v. Maryland,* 373 U.S. 83 (1963) under the U.S. Constitution.

Harrelson also separately filed his Consolidated Post-Trial Motions Of Defendant Harrelson Pursuant To F.R.Cr.P. 29 & 33 at Dkt. # 424 on December 13, 2022, and separately files a Reply to that and other motions.  That motion is a summary of the more detailed motions later filed.

1

Defendant Harrelson also filed a Joint Rule 29 Motion for Judgment of Acquittal Pursuant to Rule 29 jointly with all other Defendants in this case at Dkt. # 432 on December 23, 2022. Technically, Harrelson has standing to challenge those Counts for which the jury found him guilty, but many factors and failings of the Government have cross-cutting impacts on the evidence and analysis of various Counts including Counts affecting other Defendants as well as those Counts directly affecting only Harrelson. The presentation of evidence, argument, and legal decisions and motions throughout this case were not neatly cabined to only specific Counts.

Defendant Harrelson was found guilty by the jury in the case of *USA v. Stewart Rhodes, et al.*, Criminal Case No. 1:22-cr-00015, of (only)

a) COUNT III: Obstruction of official proceeding in violation of 18 U.S.C. §1512 (c)(2)[1]

b) COUNT IV: Conspiracy to Prevent an Officer from Discharging Any Duties in violation of 18 U.S.C. § 372

c) COUNT IX: Tampering with Documents or Proceedings and Aiding and Abetting in violation of 18 U.S.C. § 1512(c)(1)

Harrelson was found *not* guilty of all other charges, limiting the scope of his motion now.

In his Motions For New Trial, For Rule 29 Judgment Of Acquittal And To Dismiss Due To Government Refusal To Comply With *Brady v. Maryland,* 373 U.S. 83 (1963) and progeny Required Disclosure Of Exculpatory Information, filed at Dkt. # 433 on December 23, 2022, Harrelson asserted his due process rights under *Brady.* These concerned Counts III and IV.

---

[1] Though not of a conspiracy to obstruct the official proceeding.

**II. GOVERNING LAW:  *BRADY* and Other Obligations**

Rule 29 of the Federal Rules of Criminal Procedure and *Brady v. Maryland* jurisprudence are set forth in the original Motion and Memorandum of Law.  However, much of *Brady* jurisprudence in fact focuses on mandatory dismissal on appeal or an order for a new trial on appeal if *Brady* is violated.  *Brady* and progeny are heavily targeted toward the right to a new trial or outright dismissal by order of acquittal, more than an order for disclosure.  In effect, in counsel's words, disclosure before trial becomes a safe harbor without which acquittal or a new trial may be required.  The emphasis of the precedents is on ordering a new trial or ordering acquittal, with disclosure as the Government's opportunity to ensure against those outcomes.  The Government may cure the risk of a new trial or reversal by disclosing the information.

Therefore, the Court is urged to not skip over the "Governing Law" section of the Motion as being mere boilerplate.  The Court will actually find it to be quite meaningful and important.

**III. ARGUMENT**

The Government responded in its Opposition at Dkt. #441 filed on January 13, 2013:

    **A.**    **WHAT WE DO KNOW WITH ABSOLUTE CERTAINTY.**

We know that the Joint Session of Congress held on January 6, 2021, was recessed with the decision made between 1:00 PM and 2:13 PM.  We know that the U.S. Capitol building was evacuated[2] on January 6, 2021, beginning around 2:29 PM.  In fact, if we did not know that the Joint Session was interrupted, there could be no prosecution for interrupting it.

Well, technically, the Joint Session was not actually interrupted.  It was the

---

[2]    Referring of course throughout to the evacuation of Members of Congress and Congressional staff being evacuated.  Others like police officers, demonstrators, and some rioters were not immediately evacuated.

3

recommendation of the U.S.C.P. that the official proceeding be recessed as a safety precaution. Defendant is not callous but notes the technical distinction between an official proceeding which interrupts itself under the circumstances from one which is obstructed by the accused Defendant. 18 U.S.C. 1512(c)(2) is already being challenged as being stretched beyond its limits

    The Joint Session was not recessed for no reason.

    We don't know what that reason was.

    We do know what the Government hopes we will believe.

    But we don't know "the" actual reason that is true.

    Therefore, we know without a doubt that the records of the USCP headquarters will contain the actual true reason for why the Joint Session was recessed. In the records of the USCP we will find a reason. Defendant Harrelson is entitled to those records and documents.

    The Opposition incorrectly suggests that Defendant has not identified the documents he seeks. We know that there must be some record of the decision to recess the official proceeding. We know that the bureaucracies and communications around Sergeants at Arms as well as personal cellphone communications that MPD and USCP officers can be seen on surveillance video making use of contains crucial evidence to establish what occurred and why. Harrelson asked for those records and documents.

    We can also fairly conclude that there are no records or documents of the USCP headquarters which will identify Kenneth Harrelson as the reason or cause of the recess of the Joint Session of Congress. Otherwise, the prosecution would have used those records at trial. The near certainty that Kenneth Harrelson is neither mentioned by name nor described in the USCP's records as the reason for the interruption raises a strong basis for disclosure. The fact that Vice Present pence was evacuated at 2:29 after Speaker Pelosi and Majority leader

McConnel left sometime between 2:13 and 2:29 is overwhelming evidence that Harrelson's entrance at 2:40 could have had any effect.

### B. HARRELSON IS ENTITLED TO "THE" REASON – NOT A STORY PREPARED FOR TRIAL BY LAWYERS

The Government confuses the requirements of *Brady*. *Brady* is not "tell me something." *Brady* requires the actual documents grounded in truth, not a massaged presentation. The Constitutional mandate is not that the prosecution give "some" explanation, but that the prosecution disclose "the" reason.

Similarly, this Court erred in trying to speculate about why perhaps in some scenario what the records and documents *might* show – we don't actually know -- might not excuse the Defendant. But this thinking is misguided. The requirement of due process is to look at the actual documents, not to imagine what they might say. The presiding judge in this case presumably has no more knowledge of what is actually in the demanded documents than the Defendant. Therefore, the Court cannot imagine what these records and documents might say.

### C. DISCUSSION OF *BRADY* IS PROBLEMATIC

All mentions of *Brady* have seemed to present great difficulty in this case. On the one hand, a requestor needs to show a reasonable likelihood that the disclosure demanded might be exculpatory or lead to exculpatory information, witnesses, etc. On the other hand, the Court seems to have gotten caught up in trying to evaluate now at this stage the ultimate issues that the document and records themselves would actually reveal. Explaining why the demanded documents and records could be significant (there is no requirement for certainty) should not be confused with a final determination of what documents *that we have not seen* might say.

### D. COURT AND GOVERNMENT FAIL TO CONFRONT

### IMPORTANCE OF *BRADY* FOR CROSS-EXAMINATION
### AND LOCATION OF ADDITIONAL WITNESSES

Similarly, in every mention of *Brady*, the Government sidesteps the importance under *Brady* of locating additional witnesses from the disclosures and using documents and records to cross-examine witnesses. The Opposition errs by considering only one use of *Brady* material and ignoring its many applications throughout the case and trial. Of course, documents or records that show the actual innocence of an accused, that tend to show any of the elements of the charged crime to be untrue or introduce reasonable doubt are exculpatory. But any information that could lead to the discovery or locating of witnesses or help cross-examine prosecution witnesses is also exculpatory information. See "Governing Law" in original motion. The U.S. Attorney's Office has been unresponsive in many motions toward the need, importance, and recognized role under *Brady* for identifying and locating witnesses. If the Governments documents or records are silent as to any matter of guilt or doubt of guilty, but allowed Defendant's counsel to discern who might be a good witness who was close to the action to be called (even as a hostile witness) at trial to cast doubt on an element of the charged crime, the documents or records must be disclosed and are clearly exculpatory under *Brady*. Yet the Government has never seemed to notice that identifying witnesses is a core *Brady* function.

      **E.**      **MERELY PROVIDING NOTICE TO THE USCP
DOES NOT COMPLY WITH *BRADY***

The Government suggests that the Government's obligation is complete upon notifying the U.S. Capitol Police on January 20, 2022, of the USCP's obligation to provide documents and records about the USCP's decision to recess the Joint Session of Congress and evacuate the Capitol building.

The Government admits that the USCP was notified of its obligations on January 20,

6

2022 filed at ECF Dkt # 582.

The Government impliedly concedes that the USCP did not respond to that notice.[3]

This Court declined to issue a subpoena duces tecum to the USCP on the grounds that the USCP is not independent of the prosecuting Government but an integral part of the investigation team.  December 23, 2021, Order filed at ECF Dkt. # 565.

Existing jurisprudence directly contradicts that idea merely notifying police is sufficient, as discussed under "Governing Law" in Harrelson's motion particularly here when the USCP is acting in agency with the prosecution team.  It is clear that where the prosecutor becomes aware that an agency is likely to have potentially exculpatory documents or information, the Government is responsible to produce them. The prosecutor making inquiry to investigative agencies actually working on the case at hand is obligatory under *Brady* progeny.

Remember that the prosecutor is an attorney representing a client, the Government.  If the client will not cooperate with its case, even if the prosecutor is blameless, the Government (client) will still suffer the consequences.  Exactly like a civil client who does not respond to give civil discovery information to his attorney, it is not the attorney who suffers the resulting default, but the client.  It is not relevant whether there is any failing or bad faith by the prosecution.

The USCP is an arm of the U.S. Congress within the Legislative Branch.  The USCP is one of the two major victims along with its parent organization Congress who are complaining of the violation of the charges crimes.  Yes of course the law in general and the people are always interested parties in any criminal case.  But the USCP is one of two direct, major complaining

---

[3] At one point in an opposition, the Government suggested that some information about the topics of interest "might" be found in disclosures from the FBI.  This tends to show that despite Judge Amit Mehta's orders, nobody looked.  Furthermore, again, the issue is not whether someone has an opinion, but what were the documents and records capturing happening in real time.

7

victims of the events on January 6, 2021.  Therefore, if the USCP as a complaining victim does not care to provide the required documents or records, the consequences must be accepted.[4]

The Government responds that "Defendant Harrelson had the opportunity to cross-examine each of these witnesses about how his actions did or did not contribute to the hinderance and delay of Congress' Certification of the Electoral College vote on January 6, 2021."

However, *Brady* jurisprudence is crystal clear:  Documents that would aid in an *effective* cross-examination are exculpatory information that must be disclosed pursuant to *Brady* and the failure to provide such documents and records is a violation of the Defendant's constitutional rights of due process.  It is precisely to make cross-examination effective that the Government was required to produce the documents and records from the USCP headquarters.  Thus the retort actually undermines the Government's failure to disclose whatever it had.

### F. GOVERNMENT OFFERS ONLY SPECULATION, CONJECTURE, IMAGINATION OF INTERRUPTION

It now becomes clear why Harrelson moved for an order in limine to exclude speculation, conjecture, assumptions, imagination, or mind-reading from the Government's prosecution.  The Government did not actually present any evidence of Harrelson – *individually* – obstructing the official proceeding. The Government wants you to *feel* like they did.  But they did not.

The appeals court soon and this Court now must confront the context and the moving parts:  If the reason why the USCP has spent over a year refusing to disclose these documents

---

[4] Particularly where those Defendants who were violent – unlike Harrelson – or who injured USCP officers – unlike Harrelson – are being prosecuted already, while with Harrelson the Government has chosen to stretch beyond any evidence that Harrelson did any of the things that the USCP would complain of, reasonably and appropriately so. Where the Government has stretched beyond any evidence of any act by Harrelson against the USCP, but refuses to comply with constitutional duties to provide evidence to establish wrong-doing by a non-violent Harrelson, the Government must accept the result, unlike with actual rioters who were violent.

and records is that they don't have any, then the meaning is that the Government is bereft of any evidence needed to convict Harrelson. If the pantry is bare, this alone is exculpatory.

The Opposition claims that the Testimony of USCP Captain Ronald Ortega, on 10/18/22; Testimony of former U.S. House Parliamentarian Thomas Wickham, on 10/19/22; and Testimony of U.S. Secret Service Special Agent Lanelle Hawa, on 10/26/22, included the reasons for the recess of the Joint Session of Congress.

In fact, none of them testified to the reasons for the recess of the Joint Session of Congress. Those witnesses merely offered the hint of speculation inviting the listener to supply from the listener's own imagination a reason not actually stated.

The Government throughout attempts the unconstitutional concept that *someone else* violated the law, so let's just pretend that Harrelson did, too.

Nevertheless, none of that excuses the violation of *Brady*. Harrelson asked for *documents and records* from the headquarters of the USCP and specifically and explicitly *rejected* after-the-fact massaged spin created for trial. Harrelson was and is entitled to contemporaneous, as it was happening documents and records, not stories invented for trial.

Then Parliamentarian Thomas Wickham on October 19, 2022, did not suggest that he had knowledge of why the Joint Session was being recessed, only that he saw at 2:13 PM the Speaker's security detail (part of USCP) suddenly appear and remove Speaker Nancy Pelosi from the Speaker's dais or chair.

Again, the issue is not whether Wickham has an opinion. Everyone has an opinion. Does Wickham have first-hand personal knowledge consistent with Federal Rules of Evidence 602 of why and when the decision was made to recess Congress and evacuate? No. Was Wickham in the USCP headquarters as the situation developed? No. Was Wickham in USCP

HQ when the decision was made to recess? No. Was Wickham involved in the search for a potential 3rd or 4th pipe bomb that might be on Capitol grounds? No. *Brady* is not satisfied by the Defendant being told stories about what various people think.

There is nothing in 18 U.S.C. 1512(c)(2) about causing the Vice President to get in a car. The Secret Service has its own job and duties. But 18 U.S.C. 1512(c)(2) concerns an official proceeding, not the activities of the Secret Service, however important those may be. The Secret Service's testimony is only potentially (though not really) relevant to 18 U.S.C. 1752(a)(1), as to the size, extent, location, and duration of any restricted area.

The mere possibility that the Oath Keepers Defendants might have obstructed an official proceeding does not satisfy the required standard of "presumed innocent until proven guilty beyond a reasonable doubt." *See, e.g., Taylor v. Kentucky*, 436 U.S. 478 (1978). The Due Process Clause requires the prosecution to prove beyond a reasonable doubt every element of the charged criminal offense. *See, In re Winship*, 397 U.S. 358, 364 (1970). The burden to prove or disprove an element of the offense may not be shifted to the defendant. See id.; see also *Patterson v. New York*, 432 U.S. 197, 215 (1977). The presumption applies at every stage of the case. There is never a time when the Government may assume Harrelson to be guilty and then analyze the facts or the law from there.

Furthermore, the Sixth Amendment to the U.S. Constitution provides the right of Defendant Harrelson to confront his accusers. The claim that "maybe" Harrelson might have obstructed the official proceeding violates his Sixth Amendment rights.

### G. WHEN DID THE US CAPITOL POLICE DECIDE TO RECOMMEND THE RECESS OF THE JOINT SESSION OF CONGRESS AND EVACUATE?

Then Parliamentarian of the House Thomas Wickham on October 19, 2022, did move the

timing back to 2:13 PM.  Originally the Grand Jury stated that the Joint Session of Congress[5] recessed at 2:20 PM.  The Congressional Record for the House of Representatives records it as 2:18 PM.  The Joint Session reconvened until 2:29 PM.

However, the *cause* existed as of the *earlier* actions taken.  Wickham testified in this case that the Speaker's Security Detail (part of USCP) removed Nancy Pelosi from the Speaker's chair or dais at 2:13 PM.  We also learned that the USCP ordered a lock down of the Capitol building at 2:00 PM.   Therefore, whatever was the cause of the official proceeding recessing had to have existed as of 2:00 PM if not earlier.  (The USCP union contests the 2:00 PM lockdown and insists that Inspector Loyd ordered a lockdown at 1:00 PM.)  It would be impossible for Harrelson to obstruct an official proceeding after a decision to recess the proceeding.

### H. THEREFORE, BRADY REQUIRES THE DISCLOSURE OF THE DOCUMENTS AND RECORDS

It is scientifically and chronologically an impossibility for Kenneth Harrelson to have individually, personally caused the obstruction of the Joint Session of Congress in violation of 18 U.S.C. 1512(c)(2).  The decision was made by USCP headquarters no later than 2:00 PM, when Harrelson hadn't yet walked up the East Plaza steps of the U.S. Capitol guarding VIP's intended to speak at the permitted demonstration at "Lot 8" and followed those VP up the steps.  Therefore, Harrelson could not have caused the obstruction of the Joint Session of Congress.

But the Government offered nothing but speculation and conjecture.  Worse, the Government offered *vague* speculation and conjecture. Rather than meeting the standard of guilty beyond a reasonable doubt, such as the strong likelihood (given the timeline) that the

---

[5] Defendant intends to include both Houses of Congress within the Joint Session of Congress without redundantly belaboring each time that each House had retired to its own chamber to separately consider objections to the Electoral College votes of Arizona.

11

discovery of pipe bombs at 12:50 PM and 1:15 PM a few blocks from the Capitol, and the possibility of there being more, was the cause, the Government offers only creativity.

### I.  NO ROOM FOR COMPARATIVE GUILT

Furthermore, the Government Opposition argues that: "Moreover, as this Court previously found in denying the defendant's motion to compel discovery on this topic, 'it is not a defense that others on January 6th might bear greater culpability for initially breaching the Capitol Building, urging the crowd to storm past police lines, or injuring police officers.'"

But this is a distraction. As made crystal clear, there is an equally likely explanation that the USCP's search for more than two pipe bombs was the reason for the recess of Congress and the evacuation of the building, before a false legend developed and hardened in public discussion. But once again, the statement betrays an unconstitutional treatment. The Defendant is entitled to see the actual records and documents, not hypothetical suggestions as to why maybe the document and records might not show anything. (Why bother looking? They might not show anything.) The Defendant is entitled to see and rely upon the actual, real-time, as it was happening records and documents from USCP headquarters, not on the Court's imagination.

Worse, the Government's Opposition, like the misguided statement of the Court quoted, fundamentally fails: The Government has the burden of proving individual guilt of Defendant Harrelson beyond a reasonable doubt. There is no place for the concept of whether "others on January 6th might bear greater culpability for initially breaching the Capitol Building, urging the crowd to storm past police lines, or injuring police officers." The Government must actually prove that Harrelson himself, personally, caused the obstruction of an official proceeding.

    a. Did Harrelson "initially breach the Capitol building?" No, he did not. But the Defendant is entitled to the actual documents and records, not speculation, to

       mount an effective defense.

  b. Did Harrelson "urge the crowd to storm past police lines?"  No, he did not.  But the Defendant is entitled to the actual documents and records, not speculation, to mount an effective defense.

  c. Did Harrelson "injure police?"  No, he did not.  But the Defendant is entitled to the actual documents and records, not speculation, to mount an effective defense.

Then why is this Court mentioning 3 things that Harrelson did not do?  The Government must prove that Harrelson actually – himself, personally – obstructed an official proceeding.  Thus, the argument of the Opposition is nonsensical and diversionary.  It does not offer any excuse for the Government not to disclose the documents and records of the USCP headquarters as to why the USCP recommended the recess of the Joint Session of Congress.  That is, the Government must prove that if Harrelson had stayed home or – as he contemplated – gone home after a late night on January 5, 2021 – that the Joint Session of Congress would not have been obstructed.  Or if Harrelson had been the only one present on January 6, 2021, he alone would have obstructed the official proceeding.

If the Joint Session of Congress would have been interrupted whether or not Harrelson had ever been born, then the Government has failed in its burden to prove the crime beyond a reasonable doubt.  (Recall that Harrelson was charged with, but found not guilty of, conspiracy.)  If an event would have occurred either way, whether Harrelson was there or not, then the Government has not proved that Harrelson caused it.

The Court may well have wondered why Harrelson moved for an order in limine against the Government using the civil law concept of Res Ipsa Loquitur and of guilt by association.

13

Well, now we have arrived at that point where the error is laid bare and its critical significance is clear. The Government cannot prove Harrelson's guilt by suggesting that guilt can hover over a crowd like a fog or that the Court can simply imagine guilt.

The U.S. Attorney's Office is fixated on comparative guilt. Harrelson is not guilty. Not less guilty. Not guilty. The Government has failed to prove Harrelson's guilt. Therefore, Harrelson's guilt is non-existent. There is no role for comparative guilt, where no guilt at all has been proven. But again, the Government invites speculation. Let's see the documents.

### J. OBSTRUCTION OF OFFICIAL PROCEEDING – No Evidence that Kenneth Harrelson Delayed Resumption of an Official Proceeding

The Government's Opposition further confuses in response to yet another fatal flaw of the prosecution: The Government offered no evidence whatsoever that Harrelson delayed by even 1 second the resumption of the Joint Session of Congress at 8:09 PM. This newly-minted, imaginative speculation has no evidentiary basis in the trial record or anywhere else.

This also would require opinion testimony by a qualified and relevant expert. There was none. Though some witnesses had impressive careers, they were not presented or qualified as experts qualified to offer opinions.

Had Kenneth Harrelson metaphysically never existed in the universe, the amount of time needed to sweep the Capitol building would not change by 1 second. The same number of rooms would have been inspected with the aid of bomb, ammunition, and chemical sniffing police dogs, aided by security camera video guided over radio. The amount of time needed to inspect each room and space would be exactly the same. The steps taken would be exactly the same.

Which steps could the USCP (supervising other agencies assisting) have skipped if Harrelson had stayed home on January 6, 2021? Which steps were necessary? Which steps

14

were not necessary? How long should each step have taken?

These all require opinion testimony of an expert. But the Government offered none.

It appears that it is the Government's position that Harrelson left the U.S. Capitol building around 3:30 PM. (The indictments became less specific over time in some respects.) See Eighth Superseding Indictment, Dkt. # 167, paragraphs 123-124.

However, after Harrelson left the U.S. Capitol at 2:58 p.m. and the US Capitol grounds entirely, at around 3:30 PM, hundreds if not thousands of other demonstrators still remained. Some demonstrators remained on the grounds up through dusk around 6:00 PM.

So, how did Harrelson cause a delay in the resumption of the official proceeding when hundreds or thousands of people remained after he left at around 3:30 PM up until 6:00 PM? The Government is merely speculating.

The USCP headquarters documents will show what had to be done to sweep the building and when the decision was made to allow the use of the Capitol to resume. We need not limit ourselves to speculation. The records will show the actual answer.

### K. THE COURT CANNOT PROSECUTE A CROWD

The Defendant contested that the Government was attempting to evade the requirement to prove individual guilt beyond a reasonable doubt of Harrelson. The Government assured us in Dkt. #273 that it would not do this. Then it did. The Government spent much of the trial focused on what other people – not these Defendants – did. The Government attempted to convict a crowd rather than convicting individuals. The Government tried to prove guilt "in the air" not from anything Harrelson did personally. This is a serious violation of due process far more significant than anything that anyone did on January 6, 2021.

### L. OBSTRUCTION OF OFFICIAL PROCEEDING – No

### Evidence that People Merely Being in the Capitol
### Building without More Obstructed Proceeding

The Opposition argues that "the Government relied upon the supposition that merely the presence of people in the 751 foot long building would in and of itself disrupt Congressional proceedings. There was no evidence of this. And the Government was required to provide and disclose information that would prove to the jury that the presence of hundreds of people in the U.S. Capitol does not disrupt the proceedings of Congress."

The Government tried to pass off imagination and invented scenarios in place of evidence. Note that in response to Harrelson's Motion in Limine, the Government assured us it would never do that so that the Motion in Limine was unnecessary in its Opposition at Dkt # 273, filed August 23, 2022. Yet that is all that the Government did, in fact.

But the Opposition misperceives the demand. The Opposition changes the request to a request for any documents of "mere foot traffic" that disrupted the proceedings of Congress. That's not what the Defendant asked for. Evidence by the USCP of normal presence and quantities of visitors during any given business day are obvious documents in the USCP's possession that would demonstrate that the mere presence of people in the building do not in and of themselves force Congress to recess. When there is a hearing in the Capitol with a couple hundred journalists and cameramen and camerawomen milling about outside the door, often milling about an over-flow room, with activists passing out press releases, lobbyists trying to influence the hearing, and tourists flooding the Rotunda and the halls, Congress does not stop its hearings or sessions.

The Opposition notes briefly that more disruptive things occurred than the many, many thousands of school children who tour the Capitol each (normal) year. That is true. But that is not what the Defendant asked about or argued. The Government is trying to pass off the

disconcerting departure from traditional criminal law that mere presence by Harrelson – without more – somehow violates 18 U.S.C. 1512(c)(2).  Perhaps counsel could have stated better what seemed obvious.  *Without more* the Government cannot sustain a conviction against Harrelson for Harrelson merely standing and being alive, breathing, and taking up a few feet of space.  *Therefore, more is required*.  The Government must prove something more.  Not unlike a conspiracy requires proof of an overt act in furtherance of the agreed upon goals, Kenneth Harrelson merely standing and breathing in the Capitol does not cross the threshold to reach the level of obstruction of an official proceeding.  The Government must prove more than that.

To allow the Defendant to make this point, evidence that (for example) an average of X number of people roam around the U.S. Capitol each business day (in a normal, non-COVID year) would be exculpatory.  Because it is the Government which is trying to push its theory that people merely being in the Capitol is the same as obstructing an official proceeding, evidence that this theory is inconsistent with normal visitor patterns in the Capitol building is exculpatory.

Did some people assault police officers?  Yes, they did.  Harrelson did not.  But other people did.  Did some people bang on the doors of the House and Senate Chambers?  Yes, they did.  Harrelson did not, however.  Did other people do something more or worse than simply stand inside the Capitol and draw breath?  Yes, they did.  But Harrelson did not.

### M.     WHO "LED" THE "ATTACK" ON THE CAPITOL?

Who led the Attack on the U.S. Capitol?  The Government did not produce the Brady material demanded as to the USCP's tracking and evaluation of who led the attack, when, and what do they mean by leading the attack?  In order to prepare to respond in impeachment and to present a defense, this information was mandatory to be disclosed by the Government.  It was not.  Instead, the Government assured the Court that it would not make the argument that the

17

Oath Keepers "led" the attack.  Then in its opening statement, the Government did exactly that – what it promised in its Opposition at Dkt. #273 it would not do.

To seek to prove that the Oath Keeper Defendants did not "lead" an attack, Harrelson demanded any and all evidence as to the Government's surveillance and evaluation of (a) **_who_** did first approach the Capitol building on January 6, 2021, (b) exactly **_when_** someone or group first approached, (c) exactly what the Government defines as constituting an "attack."  The prosecution argued on August 23, 2022, Dkt. # 272, page 7 that this topic was "not material" (moot).  The Government then opened by arguing to the jury that the Oath Keepers "led" the attack on the Capitol – exactly what it represented in an official court filing it would not do.

### N. CAPITOL BUILDING SECURTY CAMERA VIDEO OF HALLWAY SHOWING OFFICER HARRY DUNN AND OTHER INFORMATION ABOUT DUNN

The Government claims that no security cameras exist of the hallway just off the heavily-trafficked Rotunda, where the encounter between Harrelson and Officer Dunn occurred. This is simply not credible. The Republican Party is set to take over the U.S. House Select Committee to Investigate the January 6 Attack on the Capitol on January 3, 2023. The existence of security cameras in the hallway are clearly-knowable facts, easy to determine.

The fact that the Oath Keepers stopped, turned, and defended U.S. Capitol Police is not merely some good act. The intent to assist the U.S. Capitol Police is a fundamental contradiction of the intent to take over the Congress or Capitol. One cannot have the intent to attack the U.S. Capitol and obstruct proceedings in it, while turning to defend the U.S. Capitol Police against the mob. The intent to defend the U.S. Capitol Police while Harrelson never set foot in Statuary Hall, a route that led to the House, is a complete and total rejection of any intent to take over the Capitol.

Of all of the heavily trafficked public areas of the U.S. Capitol, the Rotunda is the center piece. It is the Rotunda is where our nation's most iconic and historic works of art about our nation are hung for public viewing, along with copies of the U.S. Constitution and Declaration of Independence. If there is any place in the Capitol that would be viewed by security surveillance cameras it is the Rotunda and the adjoining hallways.

## IV. CONCLUSION

The Defendant requests this Court to grant this Motion and such other relief as may be deemed just. Defendant Kenneth Harrelson, has been denied a fair trial without the potentially exculpatory information he identified and requested.

19

Dated:  January 24, 2023 RESPECTFULLY SUBMITTED
KENNETH HARRELSON, *By Counsel*

/s/ Brad Geyer

Bradford L. Geyer, PHV
PA 62998
NJ 022751991
Suite 141 Route 130 S., Suite 303
Cinnaminson, NJ 08077
Brad@FormerFedsGroup.Com
(856) 607-5708


**CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2023, a true and accurate copy of the forgoing was electronically filed and served through the ECF system of the U.S. District Court for the District of Columbia.

/s/ Brad Geyer
Bradford L. Geyer, PHV
PA 62998
NJ 022751991
Suite 141 Route 130 S., Suite 303
Cinnaminson, NJ 08077
Brad@FormerFedsGroup.Com
(856) 607-5708