## IN THE UNITED STATES DISTRICT COURT
## FOR THEDISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Criminal No. 1:22-cr-00015-APM |
| | ) |
| KELLY MEGGS, | ) |
| | ) |
| Defendant. | ) |
| | ) |

### REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR A NEW TRIAL

COMES NOW, Defendant Kelly Meggs, joined by co-defendants' Stewart Rhodes, Jessica Watkins, Thomas Caldwell, and Kenneth Harrelson, by and through undersigned counsel, respectively submits this Reply Memorandum of Points and Authorities in further support of the Motion for a New Trial, ECF 434, pursuant to Federal Rule of Criminal Procedure 33(b)(2), and in Response to the Government's Opposition at ECF 442.

### I.     Substantial Prejudice against the Defendants Warranting a New Trial

### A.  Legal Argument

The Court is well versed in its authority to recognize the prejudice that occurred at trial and that is expressed in Defendants' Rule 29 Motion and herein.   As Defendants argued, "…a defendant 'seeking to obtain a new trial' under Rule 33 is asking the court to determine that the state of the evidence is only 'marginally sufficient' such that it 'calls for a new trial in the interest of justice." *United States v. Young*, 2013 U.S. Dist. LEXIS 204453, *12 (D.D.C. 2013) (quoting *United States v. Wiley*, 517 F.2d 1212, 1217, n.24, 170 U.S. App. D.C. 382 (D.C. Cir. 1975).   Defendant further incorporates its argument as applicable in the Reply Defendants are

filing contemporaneously in further support of their Rule 29 Motion herein, for the convenience of the court.

    a.  **The Summary Exhibits**

      The record is replete with errors and as a whole prejudiced these Defendants – which is supported by a verdict that found Mr. Rhodes and Mr. Meggs guilty of seditious conspiracy while not only not finding them guilty of property destruction, but there were also no charges for assault or physical violence promoted by these Defendants –  yet Rhodes and Meggs are guilty of planning to overthrow the United States Government?  All of the errors lead to the inescapable conclusion of prejudice.

      The government attempts to minimize errors cited in the Motion at ECF 433 by arguing that "[f]inally, to the extent that the defendants now complain about two limited alleged errors contained within these exhibits, any such errors do not mean the exhibits were improperly admitted."  (ECF 442 at p. 6).  The reason the errors are substantial is because the admission of Exhibit 1555 constitutes the predicate for testimony that follows by agents in support of the Seditious Conspiracy Charge.  The government used the predicate of Ex. 1555 for the Members of the Leadership Chat and then walked Agent Whitney Drew and then again through Agent John Moore as the predicate for the messages it introduced through the following testimony while admitting messages from that Chat after January 6th:

> Now, if we can go to the next slide, please.
> Which chat group is this?
> A This is the "Old Leadership" chat.
> Q Now, is that the name of the chat at the time the
> FBI extracted this chat from Mr. Rhodes' phone?
> A Yes.
> Q What was the name of the chat at the time on
> January 6th of 2021?
> A "Leadership Intel Sharing Secured."
> Q So that chat name sometime changed in between

those two dates; is that right?
A That's correct.
Q And the numbering here, it's 1 for Rhodes' phone,
S for Signal, and 696 as the chat number on the phone?
A Yes.
Q Which defendants were a member of this chat as of
January 6th?
A Stewart Rhodes, Kelly Meggs, and Jessica Watkins.

(10.22.2022 TR 4529).

The testimony continued:
And that slide we just went through, 1555, that
has all the different names of the chats and who was in
them, right?
A Yes.
Q Are you aware of something the government has
created that merges those two things together.
A Yes.

(10.22.2022 at Tr. 4534).

And the testimony on the misrepresentation of participants in the Leadership Chat that

related to so much of the merged evidence that continued throughout the trial can be seen also on

11/2/2022:

And could you tell us the date and time of this
message?
A January 8th, 2021, at 11:16 a.m., Eastern Time.
Q And could you read the message sent from
Ms. SoRelle's phone, please?
A "Message from Stewart: My cell is down. Will be
back up soon. Can't be avoided for now. Stand firm. Do
not go off half-cocked. There is still a chance Trump will
act as Commander in Chief. I am working with others to make
that a reality. It does zero good for anyone to initiate
force at this time. So sit tight.
"Do prepare yourselves, your gear, your teams, and
above all your community. Whatever Trump decides to do, you
will need to be ready."
Q Now, this message was sent to something called the
"Old Leadership" chat; is that correct?
A That's correct.
Q **If we could bring up what's been previously**

**admitted into evidence as Government's Exhibit 1555 and go
to the third page of this slide.**
Special Agent Moore, are you familiar with whether
the "Old Leadership" chat previously went by another name?
A I am.
Q What was that name?
A The "Leadership Intel Sharing Secured" chat.
Q Okay.
**And at least as of January 6th of 2021, does this
exhibit here fairly and accurately depict some of the
participants who were in that chat?
A It does.
Q And could you remind us or read to us who some of
those participants were?
A Stewart Rhodes, Kelly Meggs, Jessica Watkins,
Kellye SoRelle, Joshua James, Paul Stamey, and Doug Smith.**

(11.2.2022, Tr. 6446-6447).

From this point forward the government lays out the messages that follow from January

6th forward to set the predicate for seditious conspiracy.  The government argues that "[i]ndeed,

the defense pointed out those errors on cross examination and referenced them in closing to try to

convince the jury about the unreliability of the exhibits. (ECF 442 at p. 6, citing *e.g.*,

10/21/22AM Tr. at 4894 (cross-examination regarding Gov. Exh. 6731); 11/2/22 Tr. at 6584-

6596).   However, Agent John Moore who testified to Kelly Meggs' participation in the

Leadership Chat on January 6th refused to make the correction on cross examination.

While Defense counsel was able to introduce Exhibit 79 in the Defense case on direct

examination of FBI Agent Cain, the substantial prejudice is that Ex. 1555 was a predicate for

testimony that followed.  Agents such as John Moore refused to admit the error on cross, and

therefore, it became substantial prejudice.  The government not only did not call Agent Cain to

testify, but also refused to seek admission of the document that subsequently got admitted during

the defense case as KM-79, which was produced to Defendants' as a government summary

exhibit during trial.   The Exhibit was admitted along with counsel's statement that these were

the participants in the Leadership Chat on January 6th and that was the predicate to show

messages from the Leadership Chat after the 6th which the government argued showed to support

is seditious conspiracy charge.  The government misrepresented the evidence and Rhodes and

Meggs were found guilty of seditious conspiracy.  It takes at least two individuals for Seditious

Conspiracy, but the predicate that Kelly Meggs even saw those messages after January 6th was

misrepresented.

      The government further failed to reference this document that showed Kelly Meggs last

participated in any of the subject chats by January 8th with the exception of one only chat, Vetted

OK FL Chat, which he last participated in on January 20, 2021, which becomes relevant to the

charge of Tampering with Documents under Counts 7-10.   Mr. Meggs allegedly "deleted"

messages because of the Grand Jury -- when no evidence was put forward as to when Mr. Meggs

would have known of a Grand Jury investigating him, or when he actually exited nearly all of the

chats.  A Grand Jury that was only empaneled on or about January 8th.  Furthermore, the Signal

App does not necessarily show when one has left a chat, so the best way to confirm an exit is

based on a last known message[1].

---

[1] John Moore who testified to Ex. 1555 and its participants testified that
Q Sir, are you familiar with Signal as an app that
when someone leaves a chat, there will be a message pop up
from the system? Are you familiar with Signal?
A No.
Q Okay.
A I mean, and not the chat pop-ups that you're
referring to.
Q So if you're not familiar with that, then it's
fair to say that you're not familiar with when someone does
leave a chat with the app itself?
I am familiar with how Signal works as a platform,
that it's an encrypted platform that several of these
Oath Keepers used it to communicate with one another.
I don't know what --

To sustain a conviction under § 1512(c)(1), the government was required to prove:
First, the defendant altered, destroyed, mutilated, or concealed a record, document, or other object;
Second, the defendant acted knowingly;
Third, the defendant acted corruptly; and
Fourth, the defendant acted with intent to impair the object's integrity or availability for use in an official proceeding.

Defendants argued in the Motion for Acquittal, ECF 435, that accordingly, the instant case is distinguishable from other § 1512 cases wherein defendants had actual knowledge of grand jury proceedings or investigations targeted at them. *See, e.g.*, *United States v. Pugh*, 937 F.3d 108, 121 (2d Cir. 2019) ("[W]e have found the nexus requirement satisfied where a grand jury proceeding was 'foreseeable' because the defendant was aware that he was the target of an investigation."); United States v. Black, 530 F.3d 596, 603 (7th Cir. 2008) ("There was evidence that Black knew that the alleged frauds were being investigated by a grand jury and by the SEC."); United States v. Simpson, 741 F.3d 539, 552 (5th Cir. 2014) ("Simpson admitted that he deleted the emails after learning about the executed search warrants."); United States v. Persico, 645 F.3d 85, 108 (2d Cir. 2011) ("In sum, the evidence was sufficient for the jury to find that Persico had been informed by the government that he was the target of an investigation into the disappearance of Cutolo; [and,] that a grand jury proceeding on that matter was thus foreseeable to Persico and DeRoss[.]").  (ECF 435 at p. 59).

A bell rung cannot be un-rung, despite counsel's attempts to rebut the allegations predicated on Exhibit 1555, and seek to admit the correct exhibit (KM-79), the prejudice is substantial when the government misrepresents evidence in an endeavor to convict at all costs.

Furthermore, another substantial error in the summary evidence which shows a knowing misrepresentation is that text messages in Government Exhibit 6731, sent by Stewart Rhodes to

---

Q Okay. You don't know.
A -- shows up in someone's Signal app when someone leaves.
11.2.2022, Tr. 6587-6588

Kelly Meggs on the afternoon of January 6th were shown in Government Exhibit 1500 to show coordination by Rhodes and Meggs - despite FBI Agent Drew's testimony that those messages did not get delivered to Kelly Meggs' phone until a few hours later at or about 6:50PM on 1/6. Tr. 4641:6- 21 (Oct. 10, 2022). As such, the government presented a text message in 1500 that Rhodes texted Meggs at 2:41 but that is misleading when the government also knows that the message was not delivered to Mr. Meggs until about 6:50 PM that evening.

   **b.  Michael Nichols and Rico La Starza**

   In excluding Defendants' witnesses Michael Nichols and Rico La Starza the government argues that the evidence would not have been "probative" while prejudicial. At trial the government argued relevance and the court excluded the evidence on a relevancy determination, and not one based in R. 403. Nevertheless the government arguing prejudice lacks merit when Mr. Nichols was subpoenaed as a rebuttal witness for the government. Mr. Nichols would have testified to certain exhibits including what drew him to attend the event, the postings on the Oath Keepers website about security. He was expected to testify that those postings made him feel more secure about attending. And the court instead required that counsel seek to admit those two exhibits with agreement by the government -- but without the benefit of testimony for the jury. (KM Exs. 87 and 88). That is prejudicial.

   And Mr. Nichols was further going to testify about the police "Back the Blue" program on the Oath Keepers website, which talks about how to approach officers to offer assistance in times of need, which he was going to explain was exactly what he did on January 6th. Tr. 8884 l. 3-8898 l.1-6 (Nov. 15, 2022). Rico La Starza took the video of Mr. Nichols and Capitol Police Officer Johnson that showed Mr. Nichols assisting the police. Barring these witnesses on relevancy was substantially prejudicial because Defendants would have had to have Mr. Meggs

testify despite his 5th Amendment rights to address the Oath Keepers program Back the Blue.  It would have laid the foundation for Mr. Meggs' attempt to assist the police in helping people exit the building, which can be seen on CCTV 7029.

    c.  **The Government's Closing and Rebuttal Arguments were Prejudicial**

It is improper for a prosecutor's closing argument to rely on speculation or evidence not introduced at trial. *See, e.g., United States v. Maddox*, 156 F.3d 1280, 1282, 332 U.S. App. D.C. 252 (D.C. Cir. 1998). To warrant a new trial, however, "[t]he prosecutorial misconduct must have affected the jury's ability to view the evidence fairly." *United States v. Borda*, 848 F.3d 1044, 1060, 427 U.S. App. D.C. 404 (D.C. Cir. 2017). "To determine the prejudicial effect of a closing argument error, th[e] Court examines three factors: (1) the centrality of the issue affected by the error; (2) the steps taken to mitigate the error; and (3) the closeness of the case." Id. "Courts generally overturn convictions only upon a showing that improper remarks, in light of any rulings or curative instructions by the district court and in light of the trial as a whole, could reasonably have affected the jury's verdict." *United States v. Khatallah*, 313 F. Supp. 3d 176, 187 (D.D.C. 2018) (internal citation and quotation marks omitted).  *United States v. Baylor*, 2019 U.S. Dist. LEXIS 129708, *26.

The D.C. Circuit in *U.S. v. Maddox* explained that "[w]e have held many times before, and we hold once again, that in closing argument counsel may not refer to, or rely upon, evidence unless the trial court has admitted it.  *See, e.g., United States v. Small*, 316 U.S. App. D.C. 15, 74 F.3d  276, 1280 (D.C. Cir. 1996); *United States v. Boyd*, 312 U.S. App. D.C. 35, 54 F.3d 868, 871 (D.C. Cir. 1995); *United States v. Foster*, 299 U.S. App. D.C. 163, 982 F.2d 551, 555 (D.C. Cir. 1993); *United States v. Teffera*, 300 U.S. App. D.C. 23, 985 F.2d 1082, 1088, 1089 n.6 (D.C. Cir. 1993). The reasons are obvious. The practice disregards, indeed violates, the

rules governing the admission of evidence. Typically, the attorney's statements amount to blatant hearsay about matters not in the record. The transgressing attorney makes himself an unsworn witness.  And when it is the prosecutor who goes outside the record, the effect is to deprive the defendant of his right to cross-examine the witnesses against him. 156 F.3d 1280, 1282 (*citing* WAYNE R. LAFAVE & JEROLD H. ISRAEL, CRIMINAL PROCEDURE § 24.5 (2d ed. 1992)).

Defendants previously set forth "[i]t is settled law that 'a prosecutor may not use the bully-pulpit of a closing argument to inflame the passions or prejudices of the jury or to argue facts not in evidence.'"  *United States v. Abukhatallah*, 41 F.4th 608, 636 (D.C. Cir. 2022) (quoting *United States v. Childress*, 58 F.3d 693, 715 (D.C. Cir. 1995).  Specifically, the government's closing argument and rebuttal "must be confined to 'facts which are in evidence and the reasonable inferences therefrom.'"  *United States v. McGill*, 815 F.3d 846, 916 (D.C. Cir. 2016) (quoting *United States v. Jones*, 482 F.2d 747, 753 (D.C. Cir. 1973).  However, while the government may "draw inferences from evidence that support the government's theory of the case," it cannot "intentionally misrepresent the evidence."  *United States v. Moore*, 651 F.3d 30, 53 (D.C. Cir. 2011).  Finally, "during closing arguments, prosecutors may not sensationalize the facts or seek to turn jurors' perceived prejudices or favoritism against a defendant. *Abukhatallah*, 41 F.4th at 636 (citing *Moore*, 651 F.3d at 51-52).

The government argues that it may have been inartful in its statements, but the fact is that the government varied from the Indictment and made prejudicial statements about evidence not in the record.

For all of the prejudicial statements in closing and rebuttal, Defendants listed them specifically in both the Rule 29 and the Rule 33 motions at ECF 434 and 435 and in the Reply filed contemporaneously hereto on Rule 29.

Dated: January 24, 2023                    Respectfully submitted,

                                  _____/s/ Stanley E. Woodward, Jr._____
                                  Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
                                  BRAND WOODWARD LAW, LP
                                  1808 Park Road NW
                                  Washington, DC  20010
                                  202-996-7447 (telephone)
                                  202-996-0113 (facsimile)
                                  Stanley@BrandWoodwardLaw.com

                                  _____/s/ Juli Z. Haller*_____
                                  Juli Z. Haller, (DC 466921)
                                  THE LAW OFFICES OF JULIA HALLER
                                  601 Pennsylvania Avenue, N.W., Suite 900
                                  Washington, DC  20004
                                  202-729-2201 (telephone)
                                  HallerJulia@outlook.com

                                  *Counsel for Defendant Kelly Meggs*
                                  *and with permission to sign for co-defendants, through counsel for Rhodes, Watkins, Caldwell and Harrelson*

**<u>Certificate of Electronic Service</u>**

I hereby certify that on January 24, 2023 I electronically filed the foregoing with the Clerk

of Court using the CM/ECF System, with consequent service on all parties of record.


_____/s/ Juli Z. Haller_____

Juli Z. Haller, (DC 466921)
THE LAW OFFICES OF JULIA HALLER
601 Pennsylvania Avenue, N.W., Suite 900
Washington, DC  20004
202-729-2201 (telephone)
HallerJulia@outlook.com

*Counsel for Defendant Kelly Meggs*